# Richmond.

## Douglas Land Company v. T. W. Thayer Company.

### March 14, 1912.

1. Injunction to Restrain Trespass—*Effect of Judgment for Former Trespass—Estoppel—Account of Damages.*—Where an injunction is granted to restrain further trespasses upon land, pending an action to recover damages for previous trespasses, and, after judgment for the plaintiff in the action at law, the bill is amended, in which the record in the action at law, including the judgment, is exhibited, and relied on by the plaintiff as an estoppel, the chancery suit. is a substituted remedy for a second action of trespass, and an account may be taken and a decree rendered therein for the damages sustained by reason of the trespasses committed after the institution of the action at law.

2. Pleading—*Action of Trespass—Plea of Not Guilty—Liberum Tenementum—Injury to Land—Successive Actions—Estoppel.*—In an action of trespass to recover damages for cutting timber on the plaintiff's land, under the general issue of not guilty, evidence of the title of the parties is plainly admissible, and in a second action between the same parties to recover damages for a subsequent cutting of timber upon the same land, a judgment for the plaintiff in the first action is conclusive of the question of his title so far as it affects his right to recover damages for the second cutting, when it plainly appears from the record of the first action that the only question litigated therein was the title to the land, and where the rights of the parties at the time of the second cutting were identically the same as at the time of the first cutting. And this is true, although no plea of *liberum tenementum* was filed in the cause, but only the plea of not guilty.

3. Pleading—*Action of Trespass—Plea of Not Guilty—Liberum Tenementum—Extent of Estoppel.*—Under the practice in this State, in an action of trespass, everything can be proved under the plea of not guilty that can be proved under the plea of *liberum tenementum;* and in a second action between the same parties (where the title remains the same) for subsequent trespass upon land, the judgment in the first action is conclusive of the title so far as it affects the right to recover damages for such trespass, but not for other purposes.

Appeal from a decree of the Corporation Court of the city of Bristol. Decree for the complainant. Defendant appeals.

*Reversed in Part.*

The opinion states the case.

*Page, Fulkerson & Widener, J. C. Padgett,* and *J. I. Hurt,* for the appellant.

*White & Penn,* for the appellee.

BY THE COURT:

The appellee brought an action of trespass *quare clausum fregit* against the appellant, and pending that action, the defendant continuing its alleged trespasses by cutting timber from the land in dispute, the plaintiff sued out an injunction. In the action of trespass the defendant pleaded the general issue; but it affirmatively appears that the titles of both parties were distinctly put in issue, and that the only litigated question in the case was the title to the land upon which the alleged trespass was committed. There was a verdict and judgment for the plaintiff for the value of the timber cut before action at law was brought.

Nothing was done in the chancery cause pending the trial of the action at law, except the filing of the answer of the defendant. The pleadings in that cause again put in issue the respective titles of the parties. After verdict and judgment in the action at law, an amended and supplemental bill was filed in the chancery cause, in which the record in the action at law, including the judgment, was exhibited, and relied on by the plaintiff as matter of estoppel. The chancery court held that the title to the land having been put in issue and decided against the defendant, it was estopped by the judgment in the action of trespass from further asserting title to the land in dispute, and a commissioner in chancery was directed to inquire and report the value of the timber cut from the land pending the action of trespass. From that decree this appeal was taken.

The court is of opinion that the proceeding in chancery, invoked

originally for injunctive relief to prevent the further cutting of timber pending the action of trespass, was a substituted remedy for a second action of trespass for the recovery of the value of the timber thus cut.

The court is further of opinion that it clearly appearing from the record in the action at law that the only question litigated in that action was the title to the land upon which the timber was cut, and that at the time of the second cutting the rights of the parties were identical with their rights at the time of the first cutting—no new title having been acquired by the defendant between the first and second cuttings of timber—the judgment in the action of trespass was conclusive of the question of the title to the land, so far as the plaintiff's right was concerned to recover the value of or damages for the timber cut pending the action at law and claimed in the chancery cause. And this is true although no plea of *liberum tenementum*, and only the plea of not guilty, was filed in the cause.

For, as said by Mr. Minor, "The general issue of 'not guilty' in trespass amounts plainly, in its terms, to a denial of the trespasses alleged, and no more. But it will be observed that such denial, in case of trespass on land or on chattels, may logically involve as well the title, or at least the right of the plaintiff to the possession of the property, as the fact of defendant's committing the acts complained of." 4 Minor's Inst. (3d Ed.), p. 776. Andrews' Stephens' Pl. 281–2; Stephens' Pl. (Tyler's Ed.), 174; 1 Chit. Pl. (5th Am. Ed.) 437; 2 Tucker's Com. 193.

In such an action, under the general issue, evidence of the title of the parties was plainly admissible. *Callison* v. *Heddrick*, 15 Gratt. (56 Va.) 244, 248, and cases cited.

In accordance with this principle, Judge Freeman, in 1 Freeman on Judgments, sec. 311, pp. 561–'62, says: "The title cannot in some States be regarded as in issue except upon a special plea of soil or freehold, or some other equivalent pleading, but when such plea is interposed, or when, without special plea, the rules of practice in the State permit the title to be received in evidence, and to be considered by the court or jury," (as is the case in this State) "and it is in fact received, considered, and made the basis of a verdict and judgment, then that is as conclusively

31

settled as if it had been drawn in question and decided in some other action." (See also authorities cited.)

And in section 310 the same author says: "It seems to be generally, if not universally, conceded that where one has maintained trespass *quare clausum fregit* against another, and afterward sues for a subsequent trespass, the former recovery is conclusive with reference to the title set up to the premises at the time of such recovery, and the defendant can offer in evidence no title not acquired by him since the previous suit."

Mr. Black, in his work on Judgments, section 657, says: "The trial of an action of trespass may turn upon the question of title, and if either of the parties puts his title in issue, and it is tried and passed upon, the verdict and judgment in that suit will be conclusive evidence in favor of (or against) such title, at least in a subsequent action of trespass."

Whether or not, if this were an action of ejectment for the recovery of the land upon which the timber was cut, the judgment in the action of trespass would be conclusive of the title between the parties, it is unnecessary to consider in this case, as we view it, and we, therefore, express no opinion upon that question. But to hold, upon the facts disclosed by this record, that the appellee, before it can recover the value of or damages for the timber cut pending the action of trespass in the chancery cause, must go through another trial and litigate again the title to the land, because the plea in the action at law was "not guilty," instead of "*liberum tenementum*," would be clearly sacrificing, as it seems to us, substance to form, since everything that could be proved under the latter plea could be proved, and was in fact proved, under the former, and the question of title as fully and fairly investigated, and the minds of the court and jury brought to bear upon it as completely, as if the plea of *liberum tenementum* had been filed.

It follows from what has been said that the court is of opinion that the decree appealed from is without error, in so far as it holds that the judgment in the action of trespass is conclusive of the title to the lands, so far as the recovery of the value of or damages for the timber cut pending that action is concerned; but that the court erred in going further and holding that the judgment

at law was conclusive of the title to the land for purposes other than those involved in this (the injunction) case.   To that extent the decree appealed from must be reversed, and in other respects affirmed, with costs to the appellant, as the party substantially prevailing, since its appeal was necessary to obtain relief from that error in the decree.

Keith, P., and Cardwell, J., concurring in results:

The T. W. Thayer Company, on October 17, 1905, presented its original bill for an injunction to the judge of the Circuit Court of Washington county, who declined to act; whereupon, on the 18th day of October, 1905, said bill was presented to the judge of the Corporation Court of the city of Bristol, who granted the injunction.

The bill alleged that the complainant was the owner of certain lands described in the bill, and in the possession thereof, and that there was another claim of title asserted by the defendant, the Douglas Land Company, to said lands; that W. W. Hurt, general superintendent of the Douglas Land Company and of the Laurel River Lumber Company, caused the woods foreman of the logging crew of said companies to cut and break down the wire which had been stretched along the boundary of complainant, and to cut and remove a large amount of the choicest timber from complainant's property; that complainant notified the employees of said companies to cease trespassing upon the said property; that said employees desisted for a short time, but not a great while afterwards, under directions of said Hurt, general superintendent of both companies, again went upon the land in question and cut and removed timber for about one week; that from some cause said employees then ceased cutting the timber, and did not cut any more until within a few days prior to the filing of said bill, when they again commenced, and at the time of the filing of the bill they were "engaged in cutting and removing timber therefrom as rapidly as possible."

(It is perhaps well to note here that in the argument of the case under review the trespass within a few days prior to the filing of said original bill is termed "the second trespass," and

all cutting and removing of timber prior to that time is termed "the first trespass.")

The prayer of the original bill was for an injunction enjoining and restraining the cutting and removing of any timber from the lands in question, and any other trespass on the lands, until the further order of the court in the cause.

On February 15, 1910, the complainant, T. W. Thayer Company, filed in the cause an amended and supplemental bill against the same defendants—viz., Douglas Land Company, W. W. Hurt, and Laurel River Lumber Company—which, read along with the original bill, contained the allegations that in January, 1905, the Douglas Land Company and the Laurel River Lumber Company broke down the fences of complainant, entered upon its boundary of land, destroyed a dwelling house, and began to cut and remove the choicest standing timber; that as soon as complainant was advised of this trespass it protested against the same; that upon said protest the defendants ceased trespassing; that in May following the complainant instituted its action at law in the Circuit Court of Washington county against said Douglas Land Company and Laurel River Lumber Company and others, to recover damages for said trespass and for the timber cut and removed. (This action at law, *quare clausum fregit*, was for "the first trespass.")

The amended and supplemental bill alleged further that, during the pendency of the said action at law, and before the trial of the same—to-wit, in October, 1905—the Douglas Land Company and the Laurel River Lumber Company again entered upon the land in controversy and began to cut and remove choice timber. It was, as it would seem, because of this alleged trespass—designated in the record as "the second trespass"—that the T. W. Thayer Company filed its original bill in October, 1905.

The amended and supplemental bill further alleged that at the February term of the Circuit Court of Washington county the said action at law was tried on its merits, and resulted in a verdict and judgment for the complainant for $1,750; that a writ of error and supersedeas were granted by the Supreme Court of Appeals, and, upon a hearing thereof, the judgment of the circuit court was reversed, the verdict set aside, and the case remanded for a new trial; that the second trial of the action at law was had

on the merits in said circuit court at its April term, 1909, and again resulted in a verdict and judgment for the complainant for the sum of $1,750; that a writ of error was again applied for, upon the transcript of the record of said second trial, but the same was refused by the Supreme Court of Appeals; whereupon the judgment rendered on the second trial at law, with interest and costs, was paid by the Douglas Land Company, but the said company and other defendants declined to make any settlement of damages resulting from the second cutting of timber ("the second trespass"), and further declined to agree to any order in the chancery cause for an accounting.

In its amended and supplemental bill the complainant takes the position "that its right to an account in this suit for the value of the timber cut is *res adjudicata* since the determination of the action at law," because the issues presented in said action are identical in every feature with the issues presented in this chancery suit, and the prayer of this bill (after naming the defendants) is, that "the injunction heretofore granted be perpetuated; that an account be ordered to ascertain the timber cut on the land aforesaid, and the value thereof, together with any damage that has been sustained by the complainant by the cutting and removing from said land of its choicest timbers," and for general relief.

It appears that throughout this litigation the Douglas Land Company has been considered the responsible party for the alleged trespasses, and accordingly the said company appeared on May 5, 1910, and filed its demurrer to both the original and amended bills, which demurrer was overruled, and thereupon said defendant company filed its answer to said bills, in which, among other things, it is denied that "complainant's right to an account in this suit is *res adjudicata*," and certain allegations are made in the answer, but we do not deem them of sufficient importance to set out in this opinion. At the hearing of the cause, on the 6th day of July, 1910, before the Corporation Court of the city of Bristol, to which court the cause had been removed from the Circuit Court of Washington county, the Corporation Court of Bristol entered the decree from which this appeal was allowed, overruling the demurrer to the original and amended bills, and adjudging that the title to the tract of land, on which the alleged trespass

in the cutting and removing of timber was committed, was drawn in question in the said action of trespass *quare clausum fregit* between the parties to this suit, and was in said action finally adjudicated to be in the complainant, and not in the defendant, the Douglas Land Company; that the defendants were estopped to set up the title averred in the answer of the Douglas Land Company; that the injunction theretofore granted be made perpetual; and that an account be taken of the kind, quantity, and value of the timber cut in the bill and proceedings mentioned, and a commissioner was designated to take and report such an account.

The ruling of the corporation court on the demurrer is assigned as error in the petition for this appeal, but the assignment was not argued in this court, and will be taken as having been abandoned; therefore, the sole question for decision may be stated as follows: Is a judgment in an action of trespass *quare clausum fregit*, the general issue alone being the plea, *res adjudicata* as to future actions of trespass *quare clausum fregit* between the same parties, for trespass committed on the same land, if the defendant puts title in evidence; or, does a judgment for the plaintiff in an action of trespass *quare clausum fregit* forever estop the defendant from asserting title to the land upon which the trespass is committed, when the general issue is the plea and the defendant introduces title in evidence?

The question has been very ably and elaborately argued for both parties, and numerous authorities are cited, all of which it would be impossible to review in an opinion of reasonable length; but both parties agree that in Virginia, as a general rule, ejectment is the common, if not the only mode, of trying title to land. In some of the States of the Union a form of action known as trespass to try title has been, by statute, substituted for the action of ejectment. It is in form an action of trespass *quare clausum fregit*, with the additional element of notice to the effect that the action is brought to try title to the lands in controversy, as well as for the recovery of damages. We have no such action provided for by statute in Virginia. On the contrary, our statutes recognize ejectment alone as the action by which to try title to land, and require that when the right of the plaintiff to the premises, or any part thereof, is proved, the verdict, if for a part

of the land only, shall specify such part particularly as the same is proved, and with the same certainty of description as is required in the declaration. Code 1904, sec. 2746.

In those jurisdictions where trespass to try title is authorized by statute and used, "the verdict must explicitly locate the boundaries," and the judgment is in the form of recovery of damages, but the successful plaintiff is entitled to a writ *habere facias possessionem.* Andrews' Stephens' Pl. (2d Ed.) 120–1–2. The same author, at page 130, says that, in an action of trespass *quare clausum fregit,* title may come in question, but it is not essential that it should.

A judgment in an action of trespass *quare clausum fregit* is not conclusive as to the title to the close, nor as to the right of possession thereof at a time subsequent to the alleged trespass. 1 Chitty Pl., 195, and authorities cited in note "U."

The same author, at page 535, says: "The plea of *liberum tenementum* must be especially pleaded to put the title in issue"; and, "in all actions of trespass, whether to the person, personal or real property, matters in discharge or in confession and avoidance of the action must be specially pleaded."

In other words, trespass is an injury to the possession, and in an action to recover damages for such an injury, if the defendant, as a matter in discharge or in confession and avoidance of the action, wishes to rely on a claim of title to the land upon which the trespass was committed, superior to that in the plaintiff, this must be specially pleaded, since the key-note to the action is possession. Cooley on Torts, 312.

In this case, as is frequently the case in like actions, evidence was introduced as to title, but a point is in issue in a suit in such a sense that it will be concluded by the judgment therein only when an issue concerning it is directly tendered and accepted by the pleadings in the case; and a judgment is not conclusive on any point in question which, from the nature of the case, the form of the action or character of pleadings could not have been adjudicated. 23 Cyc. 1302, 1317.

The contention that, although title in this case was put in issue only by the evidence, yet, under the broad rule of *res adjudicata* in Virginia, the result must be regarded as the same, for "it might

have been put in," is without merit, for, if that view could be sustained, in every action of trespass *quare clausum fregit* in Virginia, title is tried, whether the parties so intended or not. When it is said in the law books that a judgment is conclusive not only upon the questions actually concluded and determined, but upon all matters which, under the issues, might have been litigated and decided in that suit, it is only meant that such would be the rule in a case where the prior judgment is offered as a bar to a second suit upon the same cause of action—not where the subject matter of the two controversies is different.

Trespass cannot be supported unless at the time the injury was committed the plaintiff was in actual possession, and for injuries which disturb or impair the enjoyment of it, without diverting the possession, an action of trespass *quare clausum fregit* will lie, and the right of possession in the plaintiff is necessarily involved, but not the title to the freehold. *Coke* v. *Thornton*, 6 Rand. (27 Va.) 8; *Dickinson* v. *Rankin*, 61 W. Va. 429, 56 S. E. 824; Andrews' Stephens' Pl., *supra*, 129–'30.

This subject is fully discussed, and the authorities reviewed, by Lord Ellenborough in *Outram* v. *Morewood*, 3 East 345, the opinion emphasizing the principle that *liberum tenementum*, or some like plea of title, must be pleaded in order to decide title in an action of trespass; in other words, in order for a verdict and judgment for plaintiff, in an action of trespass, to be an estoppel which prevents the defendant from afterwards asserting title to the land upon which the trespass was committed, title must have been distinctly put in issue *by the pleadings* in the action of trespass. This is a case of long standing, having been decided in 1803, but the cogent reasoning of the opinion applies fully to this case.

See also *Johnson* v. *Morse*, 11 Allen (Mass.) 540, where it was held that "the judgment in the former action was conclusive in all that was adjudged in it, which was the right of possession and not the seizin."

In *Thurman* v. *Leach*, 116 S. W. 300, the Court of Appeals of of Kentucky (February 17, 1909) held that when in an action for trespass on land the defendant denies title of plaintiff, but does not plead *liberum tenementum*, and recovers, the judgment

shows that the plaintiff had no title on which to recover, but does not adjudge title to be in the defendant, and hence is not a bar, as between defendant's and plaintiff's successors, as to whether the latter subsequently committed a trespass against the former's title.

The case of *Rodgers* v. *Ratcliff*, 48 N. C. 225, and *Stoker* v. *Fraley*, 50 N. C. 377, and a number of other cases that we could cite, go to the extent of holding that in an action of trespass *quare clausum fregit*, though the pleas of the general issue and *liberum tenementum* were entered, a general finding for the defendant was not a bar to plaintiff's right to recover in a second action for trespass on the same land.

We are, however, not called upon to determine in this case whether or not, had the plea of *liberum tenementum* been entered in the action at law, the judgment would bar appellant from setting up title in itself as a defense against the second trespass charged in this action.

There is, undoubtedly, very respectable authority for the view, contended for by the learned counsel for appellee, that the general issue of "not guilty" in a case of trespass on land or on chattels may logically involve as well the title, or at least the right of the plaintiff to possession of the property, as the fact of defendant's committing the acts complained of; but we do not understand the authorities cited in support of that proposition as going to the extent that a judgment in such a case would be conclusive of title in a subsequent action, in which the subject matter is different.

Black, in his work on Judgments, rather holds to the view that the estoppel covers the point which was *actually* litigated, but in his second volume (2d ed.), section 657, it is said: "According to the doctrine of a majority of the cases, it is necessary, in order to make a judgment in trespass conclusive of title, that the title should have been expressly put in issue by the plea of *liberum tenementum*, or some other equivalent plea; it is not sufficient that it came in controversy under the general issue."

As to what is meant by *matter in issue*, the same learned author says, in effect, that the authorities are in conflict—hopelessly so; but is not that question set at rest in Virginia by the decisions

32

of this court in *Hutchinson* v. *Kellam* and *Lymbrick* v. *Seldon*, 3 Munf. (17 Va.) 202; *Skipwith* v. *Young*, 5 Munf. (19 Va.) 276; *Clarke* v. *Brown*, 8 Gratt. (49 Va.) 549, and *Umbarger* v. *Watts*, 25 Gratt. (66 Va.) 177? While those cases are not directly in point here, they are quite convincing that title to land is not in issue in an action of trespass *quare clausum fregit* in the sense that a judgment in the case for the plaintiff will be an estoppel of the defendant in future actions of trespass upon the same land, unless title be put in the issue by the pleadings in the prior action, and not by the course and nature of the evidence merely.

The rulings in the cases of *Greenhouse* v. *Sapp*, 26 W. Va. 87, and *Dickinson* v. *Mankin*, 61 W. Va. 429, 56 S. E. 824, follow the Virginia cases just cited in holding that in an action of trespass *quare clausum fregit* title to the freehold is not brought in issue by the plea of "not guilty," nor by the introduction of evidence under that issue as to title. It is very true that in those cases the question of jurisdiction alone was determined, that question being determinable upon whether or not the matter in controversy was equal in value, exclusive of costs, to the minimum sum necessary to the court's jurisdiction, or whether title to a freehold or franchise was involved. The precise point decided was that title or boundaries of land must be directly the subject of controversy, (1 Va. & W. Va. Dig. 490), and the reasoning of the opinions in the several cases applies very fully to the case in judgment.

In *Skipwith* v. *Young*, *supra*, the action was trespass on the case, occasioned by the erection of a mill and dam by the defendant, and it appeared from the pleadings in the case that the right of the defendant to erect the mill was drawn in question. There was a verdict for the plaintiff for one penny and costs, and the question decided by this court was whether or not it had jurisdiction to review the judgment, a majority of the court holding that there was no jurisdiction, Coulter, J., taking the opposite view, and filing a dissenting opinion; but it is readily to be seen from the opinions that there was no difference of opinion between the majority of the court and Judge Coulter on the question we have under consideration, for in the latter's opinion he laid down the proposition that a judgment in an action of trespass *quare clausum fregit* would not conclude title either by way of bar or

estoppel, his opinion saying: "But it is said the cases of *Hutchin-son* v. *Kellam* and *Lymbrick* v. *Seldon,* if adhered to, must govern this case, there being no substantial difference. Those cases, I understand, were mere possessory cases in trespass *quare clausum fregit,* in which, from the pleadings, the verdict and judgment would not have concluded the party either by way of bar or estoppel in a writ of right or any other superior action, but at most would have been evidence in such future action. * * * Whatever, therefore, may be the law as to trespass *quare clausum fregit,* where the pleadings do not put the freehold in controversy, and which, therefore, would decide nothing as to it, and in which at most the verdict would only be evidence in another action, I think there is fair ground for our jurisdiction in this case."

The case of *Clarke* v. *Dower,* 67 W. Va. 298, 68 S. E. 369, decided by the Supreme Court of West Virginia June 11, 1910, reaffirms expressly *Greenhouse* v. *Sapp* and *Dickinson* v. *Mankin, supra,* and holds with those cases, and other older cases decided by this court, that the action of trespass *quare clausum fregit* is only one for invasion of present possession, not title; that "trespass cannot be employed as a substitute for ejectment"; adding: "Such is the law in the Virginias, whatever it is elsewhere."

The law in this State when this case was decided below, and now, is that this court is without jurisdiction in a civil case unless the matter in controversy be equal in value, exclusive of costs, to $300, or "unless there be drawn in question a freehold or the title or bounds of land." Code 1904, sec. 3455. It would, therefore, seem to us wholly illogical to hold that if the damages had been less than $300 in the first action of trespass, instead of more than $300, appellant's title to the land in controversy would have been decided, without the right of appeal to this court, yet the judgment in the first action may, in this second action against appellant by the appellee for a second trespass on the same land, be set up by the latter to conclude title either by way of bar or estoppel.

The cases decided by this court to which we have referred, and the weight of authority outside of this jurisdiction, establish the law to be, that a suit *quare clausum fregit* does not, on the general issue of not guilty, determine title; that to accomplish that

result there must be tendered by the defendant, and issue joined thereon by the plaintiff, a special plea of *liberum tenementum.* The defendant in such a case is not obliged to enlarge the plaintiff's case by pleading specially, and thus imparting to the judgment an additional force and effect; he has the right to join issue upon the case presented by the plaintiff, and to confine his evidence to that issue, and it cannot, as a matter of law, be assumed that he brought forward all his evidence which might have been accessible to him to meet an issue not presented by the case made by the plaintiff in his declaration, and could only, under our practice, have been brought into the issue by the filing of a special plea by the defendant, which, as in the case at bar, he did not do, and was under no obligation to do.

The value of land depends upon its possession. If the Douglas Land Company can be subjected to an unending series of actions *quare clausum fregit,* to which it is estopped to make any defense, it has been deprived of the enjoyment of its property and has lost that which gives it value.

In the beginning, ejectment was a merely possessory action. By statutory enactment from time to time, culminating in section 2756 of the Code, the judgment in such actions is made conclusive of the title and right to possession. No such quality is attributed by our statute law to any other action. It is expressly declared by section 2721 that judgments in unlawful entry and detainer shall not bar ejectment. The statute law with great minuteness guards and regulates the rights of all parties to an action of ejectment. The declaration must state the interest claimed by the plaintiff, and must describe the land, and the verdict must respond to the averments of the declaration, so that the verdict and judgment become a muniment of title. This has been the result of a long process of litigation and statutory enactment; but the opinion of the majority of the court takes a common law action of trespass *quare clausum fregit,* and gives it in substance the effect of a judgment in ejectment, for the mere title to land is worthless if another has established a right to trespass upon it at will; and this is what the estoppel maintained by the majority of the court accomplishes.

We respectfully submit that it is not in accordance with the common law—that law which prevails in this State by express

statutory adoption (sec. 2 of the Code), and has never been altered or amended, with respect to its application to the case before us, in any manner.

But, says the opinion of the court, "in the action of trespass the defendant pleaded the general issue, but it affirmatively appears that the titles of both parties were distinctly put in issue.'"

In this statement we cannot agree. There was no plea but "not guilty," and if anything can be established by authority it is that at common law, in an action of trespass *quare clausum fregit*, a plea of not guilty does not put the title in issue. Evidence was introduced touching the title, but the title was never put "in issue." If the introduction of evidence at the trial of an action *quare clausum fregit* puts the title in issue, then this court has been, for the greater part of a century, guilty of gross injustice in every case in which it has refused a writ of error because the recovery was for a sum less than that necessary to give this court jurisdiction, for if the title is "in issue" when evidence in support or denial of title is introduced, then this court has jurisdiction, by virtue of the express terms of the Constitution, and it was a miscarriage of justice to deny it. To hold that the introduction of evidence puts the title in issue must, we think, lead to great confusion. In the case before us, the evidence was preserved and made a part of the record by bill of exception, but that added nothing to the effect and force of the judgment. If the introduction of evidence puts the title in issue, then in every case in which evidence has been introduced the title has been put in issue, and that fact may be proved before another jury by way of estoppel in a subsequent action of trespass, which, in our judgment, would result in dire confusion.

Upon reason and authority we deduce the principle that a judgment for plaintiff in an action of trespass *quare clausum fregit* does not estop the defendant from afterwards asserting title to the land upon which the trespass was committed, even though the defendant put the title in evidence, where the only plea in the action of trespass is "not guilty."

For the foregoing reasons, we can concur only in the opinion of the majority of the court in so far as it reverses the decree of the lower court.

*Reversed in Part.*