Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

ROBERT LEWIS GILLESPIE,
a/k/a ROBERT LEWIS GILLISPIE                    OPINION BY
                                SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 060034                      November 3, 2006

COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

        This appeal requires us to construe the language of Code

§ 19.2-295.1 concerning bifurcated trials in criminal cases.

It presents the question whether the Commonwealth may, at the

sentencing stage of a bifurcated trial, present evidence of

the sentences imposed upon the defendant as a part of his

record of prior convictions.

                        Facts and Proceedings

        In a jury trial, Robert Lewis Gillispie[1] was found guilty

of statutory burglary.  The jury fixed his punishment at five

years imprisonment.  After considering a pre-sentence report,

the trial court imposed that sentence, to be followed by three

years of post-release probation supervision.

_____

        [1] The defendant was indicted as "Robert Lewis Gillespie
AKA Robert Lewis Gillispi."  He was sentenced by the trial
court as "Robert Lewis Gillespie a/k/a Robert Lewis Gillispie"
and that style was used in all subsequent proceedings in the
Court of Appeals and in this Court.  The defendant, in his
petitions for appeal in both courts, as well as in his briefs
on appeal, has stated that the correct spelling of his name is
"Gillispie."

At the sentencing stage of the trial, the Commonwealth offered an authenticated copy of a "Conviction and Sentencing Order" entered in the same court, dated December 8, 1998, showing that Gillispie had been convicted of grand larceny and sentenced to five years imprisonment, with three years and four months suspended upon the condition that Gillispie be of good behavior and submit to drug treatment. The order also showed that Gillispie had been charged with robbery but found not guilty of that offense.

Defense counsel objected to the exhibit as offered and moved the trial court to redact any reference to the robbery charge. The Commonwealth agreed and the trial court redacted that portion of the order. The defense also moved the court to redact the sentencing information relating to the grand larceny charge, as well as any reference to drug treatment, on the ground that both were "prejudicial to this case and could inflame the jury." The Commonwealth opposed the motion and the court denied it. The 1998 order was admitted in evidence without change except for the redaction of the reference to the robbery charge.

After this evidence was received, the jury retired to consider sentencing. During its deliberations, the jury sent written questions to the trial court, inquiring whether the judge could reduce the sentence the jury fixed, whether the

2

defendant had been on probation when the crime occurred, and in what facility the defendant would be confined if imprisoned. The jury explained, in the last question, "We don't want this defendant to spend time in penitentiary w/murderers & rapists." The court answered these questions properly, by replying that the jurors should fix a sentence they considered appropriate and not concern themselves with future events, that they should not consider the defendant's probation status, and that the Department of Corrections, not the court or the jury, determines where prisoners are housed.

After the jury reported that it had reached a verdict and returned to the courtroom, a juror asked the judge whether suspension and parole were different, and if the judge made the decision whether to suspend a sentence. The court answered both these questions in the affirmative, and asked all jurors whether, in the light of those answers, they were satisfied with the verdict they had reached or whether they wished to retire to the jury room for further deliberations. The jurors unanimously stated that they were satisfied and presented their verdict.

Gillispie appealed his conviction and sentence to the Court of Appeals, which affirmed by a per curiam opinion. We awarded him an appeal, limited to his assignment of error

relating to the trial court's refusal to redact sentencing information from his record of prior convictions.

Analysis

Code § 19.2-295.1 provides, in pertinent part:

> In cases of trial by jury, upon a finding that the defendant is guilty of a felony or a Class 1 misdemeanor . . . a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury. At such proceeding, the Commonwealth shall present the defendant's prior criminal convictions by certified, attested or exemplified copies of the record of conviction. . . . After the Commonwealth has introduced such evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment. Nothing in this section shall prevent the Commonwealth or the defendant from introducing relevant, admissible evidence in rebuttal.

In denying Gillispie's appeal on this issue, the Court of Appeals followed its prior decisions in Gilliam v. Commonwealth, 21 Va. App. 519, 465 S.E.2d 592 (1996), and Mosby v. Commonwealth, 24 Va. App. 284, 482 S.E.2d 72 (1997), wherein it held that "Code § 19.2-295.1 allows the Commonwealth to present evidence of the defendant's prior criminal convictions, which includes the conviction orders that show length of prior sentences." Mosby, 24 Va. App. at 291, 482 S.E.2d at 75. The Court of Appeals reasoned that the purpose of the statute was to enable the jury to determine an appropriate sentence and that previous efforts to punish and

4

rehabilitate the defendant were indispensable to that purpose. Gilliam, 21 Va. App. at 524, 465 S.E.2d at 595.

Our duty is to interpret the intent of the General Assembly in adopting the language it chose. If the language is plain and unambiguous, there is no need for judicial construction; the language will be applied as written. Tiller v. Commonwealth, 193 Va. 418, 420, 69 S.E.2d 441, 442 (1952). Language is ambiguous if it admits of being understood in more than one way, refers to two or more things simultaneously, is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness. Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

The Court of Appeals, in Gilliam, found the language of the statute in question here to be ambiguous because it was susceptible of more than one interpretation, and therefore appropriate for judicial construction. 21 Va. App. at 522, 465 S.E.2d at 594. We agree that an ambiguity exists, as illustrated by the positions of the parties here: The defendant contends that "record of conviction" means a document showing only the fact of conviction; the Commonwealth contends that the term refers to the final order entered by the trial court, typically showing both conviction and sentence. Nevertheless, we reach a different conclusion from

that reached by the Court of Appeals as to the intent of the General Assembly in enacting Code § 19.2-295.1.

The General Assembly adopted Code § 19.2-295.1 in its original form in 1994. At that time, bifurcated trials in capital murder cases were provided for by Code §§ 19.2-264.2, et seq., which had been in effect in varying forms since 1977. The General Assembly clearly had those laws in contemplation in 1994, when considering the extension of bifurcated trials to non-capital felonies for the first time in our history. Code § 19.2-264.2 provided then, as it does now, that the jury, at the penalty phase of a capital murder case, shall not impose the death penalty unless it finds either the "future dangerousness" predicate or the "vileness" predicate to exist "after consideration of the past criminal record of convictions of the defendant." Code § 19.2-264.4(C) provided then, as it does now, that in the penalty phase of a capital murder trial, evidence may be admissible, subject to the rules of evidence, that includes the "prior history" of the defendant.[2]

---

[2] In LeVasseur v. Commonwealth, 225 Va. 564, 593-94, 304 S.E.2d 644, 660 (1983), we held that these two provisions, read together, were not unconstitutionally vague, despite their differing language.

In ascertaining legislative intent, we presume that the General Assembly, when enacting new laws, is fully aware of the state of existing law relating to the same general subject matter. United Masonry, Inc. v. Riggs National Bank, 233 Va. 476, 480, 357 S.E.2d 509, 512 (1987); Cape Henry v. Natl. Gypsum, 229 Va. 596, 600, 331 S.E.2d 476, 479 (1985). The General Assembly is not only presumed to have been aware of the capital murder statutes in effect in 1994, but is also presumed to have been aware of our decisions construing them. Charles v. Commonwealth, 270 Va. 14, 19, 613 S.E.2d 432, 434 (2005) (citing Waterman v. Halverson, 261 Va. 203, 207, 540 S.E.2d 867, 869 (2001)).

In Bassett v. Commonwealth, 222 Va. 844, 858, 284 S.E.2d 844, 853 (1981), we were presented with the precise question presented by this appeal, but in the context of a capital murder case. There, we held that the sentences imposed as a result of the defendant's prior convictions might properly be admitted at the penalty phase of a capital murder trial, observing: "The sentence reflects the gravity of the offense and the offender's propensity for violence." Id.

In the light of our interpretation of the capital murder statutes in Bassett, the General Assembly, if it had desired the same result in non-capital felony trials, could simply have mirrored the capital murder laws when enacting Code

7

§ 19.2-295.1.  Instead, it employed more restrictive language than it had used in the capital murder laws, limiting the Commonwealth to the introduction of "the defendant's prior criminal <u>convictions</u>" by presenting copies of the "record of <u>conviction</u>." (Emphasis added.)  Section 19.2-295.1 was enacted without any provisions permitting the introduction of evidence of prior sentences as a part of the defendant's "history and background" in the Commonwealth's case in chief at the penalty phase.  By contrast, the Commonwealth may do just that in capital murder cases, relying on our interpretation in <u>Bassett</u>.  The General Assembly had an opportunity to make bifurcated trials in non-capital cases similar to those in capital cases, but chose a different course.

We consider the General Assembly's departure from the language it had used in enacting the capital murder laws to be a significant demonstration of a legislative intent to accomplish a different result with respect to non-capital cases.  We therefore construe the words "prior criminal convictions" and "record of conviction," as employed in Code § 19.2-295.1 to mean exactly what they say, and no more.

Thus, in the Commonwealth's case in chief at the penalty phase of the trial of a non-capital felony or a Class 1 misdemeanor, the Commonwealth is required to introduce evidence, as prescribed by the statute, of records showing

8

only the fact of conviction of a criminal offense, including

the name of the crime, the date of the conviction and the

court in which the conviction occurred.  If the record

contains information concerning proceedings subsequent to

conviction, such as sentence, suspension, probation or other

rehabilitative efforts, such information should be redacted

before the record is received in evidence.

In the present appeal, the Commonwealth relies on our

language in Commonwealth v. Shifflett, 257 Va. 34, 43, 510

S.E.2d 232, 236 (1999):

> We perceive no sound reason why the factors that may
> be considered by a jury in capital murder cases
> should not likewise be available for consideration
> by a jury in noncapital cases under § 19.2-295.1.
> The goal of having an informed jury assess
> appropriate punishment should be no less essential
> merely because a noncapital offense is involved.

The Commonwealth's reliance on Shifflett is misplaced.  That

case dealt with the obverse aspect of Code § 19.2-295.1, the

question of what evidence the defendant may introduce at the

penalty phase of a bifurcated non-capital felony trial.  In

§ 19.2-295.1, the General Assembly imposed no such limitations

on the defendant's evidence as it had placed upon the

Commonwealth.  While limiting the Commonwealth to "prior

criminal convictions," the statute expressly provides that the

defendant "may introduce relevant, admissible evidence related

to punishment."  It was that language that we construed in

9

Shifflett,[3] when we held that the trial court's decision as to relevancy would only be set aside for a clear abuse of discretion. Id. at 44, 510 S.E.2d at 237. For that reason, nothing we decide here is inconsistent with our holding in Shifflett.

It is conceivable that a defendant may, for his own purposes, wish to offer sentencing information at the penalty phase, and in our view of the statute, he would be free to do so. Further, as we observed in Shifflett, the statute is a two-way street. The Commonwealth as well as the defendant may introduce "relevant, admissible evidence in rebuttal." Id. at 43-44, 510 S.E.2d at 236. Thus, the Commonwealth may introduce evidence of sentencing and prior efforts to rehabilitate if the court, in its discretion, deems it relevant and admissible to rebut evidence the defendant has introduced at the penalty phase.

### Conclusion

Because the Court of Appeals erred in holding that the sentencing information was properly admitted in the

---

[3] As originally enacted in 1994, the defendant could only introduce such evidence if the Commonwealth had first introduced evidence of prior convictions. The following year, however, the General Assembly amended the statute to provide that the defendant might introduce his "evidence related to punishment" whether the Commonwealth had introduced a record of prior convictions or not. 1995 Acts, ch. 567.

10

Commonwealth's case in chief at the penalty phase of the trial, we will reverse the judgment appealed from and remand the case to the Court of Appeals for further remand to the trial court for further proceedings consistent with this opinion, limited to the issue of sentencing, pursuant to the provisions of Code § 19.2-295.1.

Reversed and remanded.

JUSTICE KINSER, with whom JUSTICE AGEE joins, dissenting.

I respectfully dissent because I cannot reconcile the majority's conclusion with either the letter or the spirit of Virginia's bifurcated scheme for the trial of non-capital felonies and Class 1 misdemeanors.

The premise underlying the majority's holding is that in Bassett v. Commonwealth, 222 Va. 844, 284 S.E.2d 844 (1981), "we were presented with the precise question presented by this appeal." I disagree. In that case, the defendant objected to the admission of information concerning his prior sentences on the basis that the evidence lacked probative value and was unduly prejudicial. Brief of Appellant at 61, Bassett v. Commonwealth, 222 Va. 844, 284 S.E.2d 844 (1981) (Record No. 810301). Neither the litigants nor the Court discussed the meaning of the phrases "record of convictions" in Code § 19.2-264.2 or "prior history" in Code § 19.2-264.4(C). Instead, we

11

were concerned only with subsection B of Code § 19.2-264.4, which states, "[E]vidence may be presented as to any matter which the court deems relevant to sentence." The Court rejected the defendant's argument, concluding that evidence of the sentences previously imposed on the defendant was relevant to "the gravity of the offense and [the defendant's] propensity for violence" under Code § 19.2-264.4(B) and, therefore, admissible. Bassett, 222 Va. at 858, 284 S.E.2d at 853.

That the Court in Bassett did not purport to ascribe definitions to the terms "record of convictions" and "prior history" undercuts the majority's reasoning. It is axiomatic that we cannot presume that the General Assembly, in enacting Code § 19.2-295.1, relied on our interpretation of statutory language in Bassett when we never undertook any such interpretation in the first place. Consequently, I turn to other canons of statutory interpretation to ascertain the General Assembly's intent in Code § 19.2-295.1.

In my view, a proper analysis begins with an examination of the words the General Assembly used, rather than those it did not. See Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003). The plain language of Code § 19.2-295.1 requires the Commonwealth to present "the defendant's prior criminal convictions by certified, attested

12

or exemplified copies of the record of conviction."  Our decisions recognize the term "conviction" often embraces more than a jury's verdict finding a defendant guilty.  Rather, in contexts such as this one, it entails a "[j]udgment . . . entered on [the] verdict."  Ramdass v. Commonwealth, 248 Va. 518, 520, 450 S.E.2d 360, 361 (1994) (emphasis added).  In Smith v. Commonwealth, 134 Va. 589, 113 S.E. 707 (1922), this Court held:

> "[W]hen the context of the statute refers to the successive steps in a criminal case, or any particular stage of such a prosecution, as distinguished from others, th[e] words[, conviction or convicted,] apply simply and solely to the verdict of guilty; but where the reference is to the ascertainment of guilt in another proceeding, in its bearings upon the status or rights of the individual in a subsequent case, there a broader meaning attaches to the expressions, and a 'conviction' is not established, or a person deemed to have been 'convicted' unless it is shown that a judgment has been pronounced upon the verdict."

Id. at 598, 113 S.E. at 710 (quoting People v. Fabian, 85 N.E. 672, 675 (N.Y. 1908)); see also White v. Commonwealth, 79 Va. 611, 615–16 (1884).

In the context of a bifurcated trial under Code § 19.2-295.1, the phrase "prior criminal convictions" refers to the "ascertainment of guilt in another proceeding" that will bear upon "the status or rights" of a defendant in a subsequent criminal adjudication.  Smith, 134 Va. at 598, 113 S.E. at

13

710.  In my view, it does not refer to the mere verdict of guilt or "fact of conviction."  Thus, a defendant's prior criminal convictions necessarily means the judgments pronounced upon verdicts of guilt.  Id.

In this case, the Commonwealth carried out its statutory duty by introducing a certified copy of the order of judgment pronounced upon a trial court's verdict finding Gillispie guilty of grand larceny.  Neither the majority nor the parties argue that there is anything anomalous about the inclusion of sentencing information in a trial court's judgment of conviction.  The majority concludes, however, that the Commonwealth can introduce "only the fact of conviction of a criminal offense, including the name of the crime, the date of the conviction and the court in which the conviction occurred."  To comply with the majority's holding, redaction of a significant portion of information set forth in judgments of conviction, which are the most common and reliable documentation of a defendant's "record of conviction," will be required as a matter of course.  I do not believe the General Assembly intended such an absurd result.  See, e.g., Cook v. Commonwealth, 268 Va. 111, 116, 594 S.E.2d 597, 87 (2004).

Nor is the majority's conclusion in accord with the General Assembly's purposes in enacting a bifurcated trial procedure for non-capital, felony cases.

> When we know the object of a statute and are called upon to construe a phrase or a sentence which, standing alone, may be susceptible of different interpretations, we know of no safer rule than to take the statute by its four corners and critically examine it as a whole to ascertain the legislative intent, as manifested by its different provisions. If, upon such an examination, an interpretation can be made, consistent with the language used, which will carry into effect the object sought to be accomplished by the statute, that interpretation should be adopted, in preference to one which would be equally consistent with the language used, standing alone, but which would defeat, or tend to defeat, the manifest intent of the legislature.

Harris v. Commonwealth, 142 Va. 620, 625, 128 S.E. 578, 579 (1925).

Criminal punishment is the means by which an orderly state pursues the recognized ends of prevention, restraint, rehabilitation, deterrence, education, retribution, and restoration.  1.5 Wayne R. LaFave, Substantive Criminal Law § 1.5 (2d ed. 2003 & Supp. 2007); see also Byrd v. Commonwealth, 30 Va. App. 371, 375, 517 S.E.2d 243, 245 (1999) ("the purposes underlying the punishment of criminal conduct include deterrence, incapacitation, rehabilitation, and retribution").  With these goals in mind, a jury has the duty to fix "a specific term of confinement that it considers to be

15

an appropriate punishment under all the circumstances revealed by the evidence in the case." Fishback v. Commonwealth, 260 Va. 104, 113, 532 S.E.2d 629, 633 (2000). We have held, "A jury should not be required to perform this critical and difficult responsibility without the benefit of all significant and appropriate information." Id. That the effectiveness of previous attempts to rehabilitate, deter, or educate a particular defendant is "significant and appropriate information" for a jury to consider is beyond serious question. See Bassett, 222 Va. at 858, 284 S.E.2d at 853. Thus, in my view, the General Assembly's purpose in enacting Code § 19.2-295.1 was to advance "truth in sentencing." Fishback, 260 Va. at 113, 532 S.E.2d at 632.

The majority opinion, however, is not in accord with that purpose. If the majority believes the General Assembly had another purpose in mind when it enacted Code § 19.2-295.1, its opinion does not disclose it.

The better view is that the General Assembly did not intend to limit the evidence admissible in the Commonwealth's case in chief in the penalty phase of a non-capital, felony trial to the mere fact of a defendant's prior convictions. I cannot ascribe a meaning to the provisions of Code § 19.2-295.1 that would impede a jury's ability to "fashion[] a sentence suitable both to [the] defendant and the offense."

16

<u>Gilliam v. Commonwealth</u>, 21 Va. App. 519, 524, 465 S.E.2d 592, 595 (1996).  For these reasons, I respectfully dissent and would affirm the judgment of the Court of Appeals and find that the sentencing information at issue was properly admitted in the Commonwealth's case in chief during the penalty phase of Gillispie's trial.