JUSTICE POWELL concurring
 
 [1]
 
 in part and dissenting in part.
 

 Although I agree with the majority that general district courts, as courts not of record,
 do not have the subject matter jurisdiction to try title to real property, I cannot agree with the majority's reasoning that questions concerning title are the equivalent of trying title. In my opinion, there is a significant difference between an action that turns on the question of title and an action that tries title. The former is merely an evidentiary question, whereas the latter involves a conclusive determination of a party's claim of title. As the majority's ruling is unsupported by this Court's jurisprudence, leads to an unnecessary expansion of the concept of trying title and impedes the ability of home owners to protect the possession of their homes, I must respectfully dissent.
 

 As an initial matter, rather than simply equate a question concerning title with trying title, I believe it is important to first define the term "try title." Our jurisprudence makes it clear that the term clearly encompasses a number of different actions. Accordingly it is necessary to review these actions in order to provide a proper definition. The two most common forms of trying title are ejectment (Code § 8.01-131, et seq. ) and quiet title (Code § 55-153 ). "Ejectment is an action at law to determine title and right of possession of real property." Brown v. Haley ,
 
 233 Va. 210
 
 , 216,
 
 355 S.E.2d 563
 
 , 567 (1987). At common law, an ejectment action "was the exclusive remedy to try title and settle controverted boundaries of land." Patterson v. Saunders ,
 
 194 Va. 607
 
 , 610,
 
 74 S.E.2d 204
 
 , 206 (1953). To bring an ejectment action, a plaintiff must allege he
 is the owner of the legal title to real property that he does not currently possess. Otey v. Stuart ,
 
 91 Va. 714
 
 , 716,
 
 22 S.E. 513
 
 , 514 (1895). Further, "[t]he plaintiff has the burden of proving that he has good title and the right to possession, and he must recover upon the strength of his own title rather than upon the weakness of the defendant's title." Providence Properties, Inc. v. United Virginia Bank ,
 
 219 Va. 735
 
 , 744,
 
 251 S.E.2d 474
 
 , 479 (1979). Most importantly, once the plaintiff proves he has good title and the right of possession, the judgment in his favor "shall be conclusive as to the title or right of possession established in such action, upon the party against whom it is rendered, and against all persons claiming from, through, or under such party, by title accruing after the commencement of such action, except as hereinafter mentioned." Code § 8.01-163 (emphasis added).
 

 In contrast to an ejectment action, a party in possession of the property who claims to have good title and the right of possession must bring an action to quiet title. "[A]n action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." Maine v. Adams ,
 
 277 Va. 230
 
 , 238,
 
 672 S.E.2d 862
 
 , 866 (2009). Further, "in a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it."
 
 Id.
 
 Thus, unlike ejectment, where judgment only concludes the matter between the parties to the action, the judgment in a quiet title action conclusively establishes complete title to the property in the prevailing party.
 

 In addition to ejectment and actions to quiet title, this Court has recognized a third form of trying title: actions that implicitly try title. Such actions arise where the issue of title is raised and conclusively adjudicated between the parties in a collateral proceeding. Unlike the other forms of trying title, actions that implicitly try title do not establish complete title in one party or the other; rather, such actions typically conclusively establish that one party does not hold title to the property and estops that party from asserting title in a subsequent action.
 

 The trial of an action of trespass may turn upon the question of title, and if either of the parties puts his title
 in issue, and it is tried and passed upon, the verdict and judgment in that suit will be conclusive evidence in favor of (or against) such title, at least in a subsequent action of trespass.
 

 Douglas Land Co. v. T. W. Thayer Co. ,
 
 113 Va. 239
 
 , 242,
 
 74 S.E. 215
 
 , 216 (1912) (internal quotation marks and citation omitted).
 

 Noting that the underlying action was for trespass, the Court in Douglas Land Co. expressed no opinion as to whether, in an ejectment action, "the judgment in the action of trespass would be conclusive of the title
 between the parties."
 
 Id.
 
 However, upon revisiting the issue, this Court acknowledged that a party is estopped from relitigating the issue of title in an ejectment action if that issue has already been raised and conclusively adjudicated on the merits in a trespass action. Kesler v. Fentress ,
 
 223 Va. 14
 
 , 18-19,
 
 286 S.E.2d 156
 
 , 158 (1982).
 

 When the various actions trying title
 
 [2]
 
 are viewed together the defining characteristic of these actions becomes readily apparent. An ejectment action conclusively establishes whether or not the plaintiff is entitled to complete title to the property. An action to quiet title conclusively establishes who holds complete title to the property. An action that implicitly tries title conclusively establishes that a party does or does not hold title to the property, thereby estopping at least one party to the action from subsequently bringing an action to try title. Notably, all of the actions trying title that have been recognized by this Court will always result in at least one party being conclusively adjudicated as holding or not holding complete title to the property. Thus, the defining characteristic of an action trying title is that collateral estoppel prevents at least one party to the action from relitigating the issue of title because that issue has been conclusively determined as to that party. Therefore, in my opinion, the term "try title" refers to those actions that result in a conclusive adjudication of whether a party does or does not have title to property.
 

 Unlawful detainer actions, on the other hand, involve a "controversy concerning the possession of land."
 

 Pannill v. Coles , 81 Va. (6 Hans.) 380, 383 (1886) (emphasis added). The purpose of such actions is "to try the right of possession." Gale v. Trust Co. of Norfolk ,
 
 142 Va. 170
 
 , 171,
 
 128 S.E. 643
 
 (1925). This Court has recognized that, while the determination of who has the right of possession "may turn altogether upon the validity of [a party's] title," Corbett v. Nutt ,
 
 59 Va. 624
 
 , 648 (1868), "the question of complete title is not the question to be determined." Pannill , 81 Va. (6 Hans.) at 385 (emphasis added). Indeed, for 190 years, this Court has recognized that in an unlawful detainer action "[t]he only question is, whether the plaintiff is entitled to possession as against the defendant. For the purpose of determining his question, the title may be given in evidence." Allen v. Gibson ,
 
 25 Va. 468
 
 , 477 (1826). By the same token, for the purpose of determining possession, the title that has been given into evidence should be subject to inquiry, just like any other piece of evidence.
 

 Moreover, as previously noted, the defining characteristic of an action trying title is the collateral estoppel that attaches with regard to a party's claim of title. "To ascertain the scope of the estoppel sought to be asserted, and to determine just what has been adjudicated and between what parties, inquiry may extend to the evidence and instructions as well as to the pleadings and judgment." Patterson v. Anderson ,
 
 194 Va. 557
 
 , 565,
 
 74 S.E.2d 195
 
 , 200 (1953). A review of the proceedings in this case indicates that neither party sought to conclusively adjudicate the issue of title. Therefore, because neither party could rely on this action for collateral estoppel purposes, it cannot be said that the present case is an action to try title.
 

 Not only is neither party seeking to have the issue of title conclusively adjudicated, but the General Assembly has expressly indicated that neither party
 
 could
 
 seek to have such an issue conclusively adjudicated in an unlawful detainer action. Code § 8.01-130 explicitly states:
 

 No judgment in an action brought under the provisions of this article shall bar any action of trespass or ejectment between the same parties, nor shall any such judgment or verdict be conclusive, in any such future action, of the facts therein found.
 

 Code § 8.01-130 makes it clear that the General Assembly did not intend for an unlawful detainer action to definitively resolve any issue as to title.
 
 [3]
 
 Rather, the General Assembly
 has explicitly stated the exact opposite: unlawful detainer actions cannot conclusively establish any issue as to title. In other words, the General Assembly intended for unlawful detainer actions to have the limited effect of deciding who among the parties to the action has the right of possession at that time. In light of the plain language of Code § 8.01-130, it is unclear how it can be said that an unlawful detainer action "tries title."
 
 [4]
 

 Furthermore, this statutory scheme supports the principle that not only can evidence of title be presented in an unlawful detainer action, but it can also be disputed. By including Code § 8.01-130, the General Assembly indicated that it anticipated evidence of title would be presented and disputed in an unlawful detainer action. If it did not anticipate such evidence would be presented, there would be no need for any limitation of the preclusive effects of unlawful detainer actions, especially with regard to matters that actually try title (i.e., ejectment actions).
 

 Finally, it cannot be overlooked that the General Assembly has expressly conferred jurisdiction over unlawful detainer actions upon general district courts with no limitations. Contrary to the result reached by the majority, nothing in Code §§ 16.1-77(3) or 8.01-126 indicates any limitation upon the jurisdiction of a general district court to hear unlawful detainer actions.
 
 [5]
 
 For example,
 Code § 16.1-77(3) does not indicate that general district courts have jurisdiction over all unlawful detainer actions
 
 except
 
 those that concern a question of title. Given our presumption "that the General Assembly, when enacting new laws, is fully aware of the state of existing law relating to the same general subject matter," Gillespie v. Commonwealth ,
 
 272 Va. 753
 
 , 758,
 
 636 S.E.2d 430
 
 , 432 (2006), the reason that no such statutory limitation exists is obvious: such language is unnecessary. A version of Code § 8.01-130 has been codified since at least 1855, see Olinger v. Shepherd ,
 
 53 Va. 462
 
 , 473 (1855), and, as previously noted, it clearly allows for the validity of title to be litigated in an unlawful detainer action. If not, the prohibitions contained in Code § 8.01-130 would be unnecessary.
 

 Considering that it has been the law of the Commonwealth since at least 1855 that unlawful detainer actions do not try title, Olinger , 53 Va. (12 Gratt.) at 473, in conjunction with this Court's long recognition that the validity of a party's title may be at issue in an unlawful detainer action, Corbett , 59 Va. (18 Gratt.) at 648, it is clear to me that general district courts have jurisdiction to hear unlawful detainer actions and decide the limited issue of possession even when a bona fide question of title is raised. Thus, I fail to appreciate the conundrum to which the majority refers. I am, however, cognizant of the potential conundrum that the majority opinion creates. Notably, the majority has created a new class of cases where a court is deprived of jurisdiction, not because of the nature of the claim or the successful assertion that the court lacks jurisdiction (e.g., a plea in bar), but because the defendant simply raises a specific defense. To my knowledge, there exists no other class of cases where a court loses jurisdiction based on the nature of the defense raised.
 

 Moreover, I am particularly concerned with what appears to be an imbalance in the majority's approach. Under the majority's approach, a plaintiff's allegation of a valid trustee's deed is sufficient to conclusively establish its right of possession. However, a defendant cannot merely present evidence to rebut the validity or bona fides of that deed in general district court. Rather, according to the majority, a defendant must do significantly more than just deny the validity of the trustee's deed. A defendant must assert a bona fide question of title "sufficient to survive a demurrer had the
 [defendant] filed a complaint in circuit court seeking [to set aside a foreclosure.]" In other words, a defendant must plead sufficient facts to meet a different standard for a different cause of action that can only be raised in a different court.
 
 [6]
 
 Even then, by successfully raising the requisite bona fide question of title, the defendant cannot have the matter resolved in general district court. Instead, the defendant can only cause the matter to be removed from the general district court to be heard in the circuit court.
 

 Furthermore, I cannot overlook the fact that the majority effectively holds that a general district court only has jurisdiction to rule against a defendant. If a defendant has raised sufficient allegations to allow a general district court to rule in that defendant's favor, that court loses jurisdiction over the matter, but if the defendant fails to raise sufficient allegations, the court retains jurisdiction. Stated differently, the majority has crafted an approach that prevents a general district court from ruling on the merits in favor of a defendant.
 

 Thus, it is clear to me that the general district court had subject matter jurisdiction to hear the present case regardless of the defense raised by the Parrishes. As a result, I would also find that the circuit court properly exercised its derivative jurisdiction. Therefore, it is necessary to address the circuit court's decision to grant Fannie Mae summary judgment. In my opinion, the circuit court erred in granting summary judgment. Notably, by raising a bona fide question of title, the Parrishes have presented a disputed issue of material fact. Furthermore, our case law establishes that Fannie Mae was not entitled to judgment as a matter of law on this issue. Indeed, under this Court's jurisprudence, the exact opposite is true.
 

 The general rule concerning the position of a trustee under a deed of trust is that the trustee is a fiduciary for
 both debtor and creditor and must act impartially between them. Implicit in this rule is the proposition that a trustee must refrain from placing himself in a position where his personal interest conflicts with the interests of those for whom he acts as fiduciary.
 

 Generally, a trustee cannot be both a seller and a buyer at his own auction sale, because the two roles are incompatible. When a trustee buys at his own sale, a constructive fraud exists; the transaction is voidable; and when attacked, the sale must be set aside. In such a situation, the adequacy of consideration, fairness of the sale, and good motive of the trustee in purchasing are not controlling. A prime reason for making such a sale voidable is the necessity of upholding the fiduciary relationship between the trustee and those for whom he acts.
 

 Whitlow v. Mountain Trust Bank ,
 
 215 Va. 149
 
 , 152,
 
 207 S.E.2d 837
 
 , 840 (1974) (citations omitted) (emphasis added).
 

 In the present case, Atlantic Law Group, LLC ("ALG"), the trustee, was also the agent of the purchaser, Fannie Mae. Notably, ALG was not only the trustee, but it also represented Fannie Mae in the general district
 court and circuit court throughout the underlying litigation. Thus, the record clearly demonstrates that Fannie Mae was both the buyer and, through its agent, seller at the foreclosure auction. As Whitlow requires that the foreclosure sale be set aside, the trial court had no legal basis for granting the summary judgment. Accordingly, I would reverse the decision of the trial court and remand the matter for further proceedings.
 

 "There are several stages or degrees requisite to prove a complete title to lands and tenements:
 

 1st. The lowest and most imperfect degree of title consists in the mere naked possession or actual occupation of the estate, without any apparent right or any shadow or pretence of right to hold or continue such possession. And at all events without such actual possession no title can be completely good. 2d. The next step to a good and perfect title is the right of possession, which may reside in one man while the actual possession is not in himself, but in another. 3d. The mere right of property, the proprietatis, without either the possession, or the right of possession, the mere right is in him, the jus merum, and the estate of the owner is in such cases said to be totally divested, and put to a right. 4th. A complete title to lands, tenements, and hereditaments. For it is an ancient maxim of the law that no title is completely good unless the right of possession be joined with the right of property, which right is then denominated a double right, jus duplicatum, or droit droit. And when, to this double right the actual possession is also united, there is, according to the expression of Fleta, juris et seisinae conjunctio, there and then only is the title completely legal."
 

 Pannill v. Coles, 81 Va. (6 Hans.) 380, 383-84 (1886) (emphasis added) (quoting 2 William Blackstone, Commentaries 195); see also 2 Henry St. George Tucker, Commentaries on the Laws of Virginia 178-80 (3d ed. 1846); 2 John B. Minor, Institutes of Common and Statute Law 511-15 (3d ed. 1882).
 

 The Court's discussion in Pannill of the distinction between right of possession and complete title arose in the context of the appellee's motion to dismiss the writ of error on the grounds that Article VI, Section 2, of the Constitution of Virginia did not confer appellate jurisdiction on the Court over an unlawful detainer action because it was not a controversy "concerning the title" of land. Pannill, 81 Va. at 382-83. The Court concluded that an unlawful detainer action, involving only right of possession, involved an element of title, and therefore, was an action "concerning title." Id. at 385-86.
 

 Code § 16.1-77(3) provides that "each general district court shall have ... [j]urisdiction of actions of unlawful entry or detainer as provided in Article 13 (§ 8.01-124 et seq.) of Chapter 3 of Title 8.01." Code § 8.01-126(A) provides that "[i]n any case when possession of any house, land or tenement is unlawfully detained by the person in possession thereof, the landlord, his agent, attorney, or other person, entitled to the possession may present to a magistrate or a clerk or judge of a general district court a statement under oath of the facts which authorize the removal of the tenant or other person in possession."
 

 Code § 8.01-126 does not make the distinction, as the majority does, between the unlawful detainer plaintiff "who once held both title and possession" and the unlawful detainer plaintiff "who never held possession."
 

 Instead of unpacking the broad principle that general district courts are without jurisdiction to "try title" to understand how it operates in conjunction with settled rules of title and the statutory grant of jurisdiction to general district courts to try right of possession in unlawful detainer actions, the majority plainly discards the "first principles" of title previously approved by this Court. See Pannill, 81 Va. at 383. Armed with its newly crafted concept of "title," the majority invokes this broad principle as applied outside the context of unlawful detainer actions. See, e.g., Addison v. Salyer,
 
 185 Va. 644
 
 , 648,
 
 40 S.E.2d 260
 
 , 262 (1946) (trial justice was without jurisdiction to reform deed in an attachment proceeding); Warwick v. Mayo,
 
 56 Va. 528
 
 , 540-41 (1860) (where the mayor imposed a fine for alleged obstruction of a street and person so fined claimed ownership of property on which the obstruction was placed, the mayor was without jurisdiction to determine ownership of property). These cases do not involve unlawful detainer actions, and therefore, the jurisdiction granted to courts to adjudicate right of possession. Furthermore, neither contains any discussion of the successive degrees of title. Accordingly, they cannot provide any meaningful guidance here.
 

 Although the majority characterizes this case as involving a challenge to the validity of the trustee's deed, the Parrishes do not seek to invalidate the trustee's deed. In fact, the Parrishes readily acknowledge that they cannot and do not seek to set aside the trustee's deed. The issue before the general district court was whether the Parrishes' allegations of a breach of the deed of trust, if proven true, would entitle them to possession of the property in the absence of setting aside the trustee's deed. If proof of a violation of the deed of trust would entitle the Parrishes to possession, then the general district court would be required to consider such evidence and determine right of possession. If proof of violation of the deed of trust would not entitle the Parrishes to possession, then such evidence would be irrelevant to the determination of right of possession. Under either scenario, the general district court had jurisdiction to determine the right of possession.
 

 The majority's rejection of the principles of title discussed in Pannill appears to be based on language found in the earlier case of Corbett v. Nutt,
 
 59 Va. 624
 
 , 648 (1868), an unlawful detainer action in which the parties presented competing evidence of right of possession. Noting that the controversy in an unlawful detainer action may turn "upon the validity of the title under which the defendant claims to hold the possession," the Court in Corbett rejected an argument that unlawful detainer was not an appropriate remedy where "title alone is involved." This language is entirely consistent with the Court's recognition in Pannill that right of possession is a form of title and, in fact, validates the reality that unlawful detainer actions are an expedient statutory remedy for determining the right of possession, one form of title-not good and complete title. Furthermore, to the extent the majority relies on this language as authority for the proposition that right of possession depends on good and complete title, this interpretation is analytically unsupported because Corbett was decided prior to Pannill, Pannill is consistent with Corbett, and the majority must abandon the traditional four degrees of title in favor of a one-dimensional concept of title to get there.