PRESENT: Lemons, C.J., Mims, McClanahan, Powell, and Kelsey, JJ., and Russell and Millette, S.JJ.

BRIAN D. PARRISH, ET AL.

                                     OPINION BY

v. Record No. 150454                  JUSTICE WILLIAM C. MIMS
                                        June 16, 2016

FEDERAL NATIONAL MORTGAGE ASSOCIATION

FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

In this appeal, we consider whether a general district court has subject matter jurisdiction under Code §§ 16.1-77(3) and 8.01-126 to adjudicate an action for unlawful detainer when a homeowner challenges the validity of a trustee's deed after foreclosure, and whether a circuit court has such jurisdiction under Code §§ 16.1-106 and 17.1-513 in a de novo appeal from such a proceeding. We also consider whether a circuit court may consider in a de novo appeal the pleadings originally filed in the general district court proceeding.

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Brian D. and Teresa D. Parrish owned a parcel of real property situated in Hanover County, which they conveyed by deed of trust to Brian K. Stevens, trustee, to secure a note in the principal amount of $206,100, plus interest. In May 2014, ALG Trustee, LLC, the substitute trustee under the deed of trust, conveyed the parcel by trustee's deed to Federal National Mortgage Association ("Fannie Mae"). Fannie Mae thereafter sent the Parrishes a notice to vacate. It later filed a summons for unlawful detainer in the general district court.

The Parrishes responded by alleging that the foreclosure was invalid because their deed of trust incorporated 12 C.F.R. § 1024.41(g), which they asserted prohibits foreclosure if a borrower submitted a completed loss mitigation application more than 37 days before the foreclosure sale. They alleged that they had submitted such an application. They further alleged

that Fannie Mae (their lender as well as the foreclosure purchaser) and its agent had instigated the foreclosure despite the pending application and in breach of the deed of trust. The court awarded Fannie Mae possession and the Parrishes filed a de novo appeal in the circuit court.

In the circuit court, Fannie Mae filed a motion for summary judgment or motion in limine in which it argued that its trustee's deed was prima facie evidence of its right of possession. It argued that the circuit court should exclude any defense contesting the validity of the foreclosure from which the deed arose because the general district court lacked subject matter jurisdiction to try title in a proceeding on unlawful detainer. Fannie Mae contended that because the circuit court's subject matter jurisdiction on appeal from the general district court was merely derivative of the general district court's subject matter jurisdiction, the circuit court also lacked such jurisdiction. The Parrishes opposed Fannie Mae's motion, arguing among other things that because the appeal was de novo, the circuit court could not consider the pleadings filed originally in the general district court, to which Fannie Mae referred in its motion. The court thereafter granted Fannie Mae's motion and awarded it possession of the parcel.

We awarded the Parrishes this appeal.

## II. ANALYSIS

In one assignment of error, the Parrishes assert that the circuit court erred by granting Fannie Mae's motion for summary judgment and awarding it possession of the parcel. Fannie Mae responds that the circuit court did not err because it lacked subject matter jurisdiction to consider the validity of the foreclosure; the general district court had no subject matter jurisdiction to try title, so the circuit court had none in the appeal.

Subject matter jurisdiction is a threshold question. Spencer v. City of Norfolk, 271 Va. 460, 462, 628 S.E.2d 356, 357 (2006). It is a question of law we review de novo. Glasser & Glasser, PLC v. Jack Bays, Inc., 285 Va. 358, 369, 741 S.E.2d 599, 604 (2013). Subject matter

2

jurisdiction "is the authority granted through constitution or statute to adjudicate a class of cases or controversies." Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755 (1990). In deciding questions of subject matter jurisdiction, we are not limited to the arguments raised by the parties. See id. at 169-70, 387 S.E.2d at 755-56 (noting that courts may raise questions of subject matter jurisdiction sua sponte and that parties can neither waive nor confer subject matter jurisdiction).

As courts not of record, general district courts are creations of the General Assembly. Va. Const. art. VI, § 8; Code § 16.1-69.7. They are courts of limited jurisdiction and may exercise only such subject matter jurisdiction as has been expressly conferred by statute. Addison v. Salyer, 185 Va. 644, 648, 40 S.E.2d 260, 262 (1946). It is well-settled that when exercising its appellate jurisdiction in a de novo appeal, the circuit court's subject matter jurisdiction is derivative of the court not of record from which that appeal is taken. Id. at 651-52, 40 S.E.2d at 264. Therefore, when exercising its de novo appellate jurisdiction, the circuit court has no more subject matter jurisdiction than the general district court had in that court's original proceeding.[1] Thus, the scope of the general district court's subject matter jurisdiction is the dispositive issue here.

Code §§ 16.1-77(3) and 8.01-126 confer upon general district courts subject matter jurisdiction to try actions for unlawful detainer. However, we have expressly held that courts not of record have no subject matter jurisdiction to try title to real property. Addison, 185 Va. at 648-49, 40 S.E.2d at 262; see also Warwick v. Mayo, 56 Va. (15 Gratt.) 528, 540-41 (1860) ("In

---

[1] A court's appellate jurisdiction is distinct from its original jurisdiction. For example, circuit courts have original jurisdiction over unlawful detainer actions under Code § 8.01-124 in addition to appellate jurisdiction over such actions filed originally in general district court, but this grant of original subject matter jurisdiction is not invoked in an appeal from an unlawful detainer proceeding originally filed in a general district court.

3

Virginia, it is not pretended that [courts not of record] have ever been empowered by any statute to try, without writ, titles to land in civil causes."). In the 156 years since Warwick and the 70 years since Addison, the General Assembly has amended the provision currently codified at Code § 8.01-126 several times. See, e.g., 1870-71 Acts ch. 130; 1890 Acts ch. 213; 1904 Acts ch. 211; 1940 Acts ch. 193. Nevertheless, it has not expressly conferred upon general district courts subject matter jurisdiction to try title in an unlawful detainer action. We presume that the legislature is aware of its own statutes conferring subject matter jurisdiction upon courts not of record and our precedents interpreting them. Andrews v. Commonwealth, 280 Va. 231, 286, 699 S.E.2d 237, 269 (2010). Its silence therefore evidences approval. Manchester Oaks Homeowners Ass'n v. Batt, 284 Va. 409, 428, 732 S.E.2d 690, 702 (2012).

However, this creates a conundrum because some actions for unlawful detainer necessarily turn on the question of title. Unlawful detainer is an action against a defendant who lawfully entered into possession of real property but whose right to lawful possession has since expired. It is brought by a plaintiff lawfully entitled to possession at the time of suit, which the defendant is then unlawfully withholding. Allen v. Gibson, 25 Va. (4 Rand.) 468, 473 (1826). The validity of the plaintiff's right of possession is an issue that, when disputed, must be determined in the adjudication of the unlawful detainer action. Id. at 474. The plaintiff must show either (1) prior actual possession, which was then yielded to the defendant under some temporary or defeasible estate that has ended, or (2) a right of possession acquired after the defendant's entry. Id. at 474-76.

Whether the plaintiff has a right of possession will not always present a question of title. Such a question will never arise in the first class of cases, where the plaintiff's right is based on prior actual possession. For example, a landlord may bring an action for unlawful detainer against a tenant who holds possession of the leased premises in violation of the lease or after it

4

has expired. In such cases, the defendant's possession is derivative of the plaintiff's title, and the defendant is not permitted to challenge it. Emerick v. Tavener, 50 Va. (9 Gratt.) 220, 223 (1852). However, a plaintiff in the second class of cases, who claims a right of possession acquired after the defendant's original, lawful entry, must show the validity of that right. When the plaintiff's after-acquired right of possession is based on a claim of title, the plaintiff may be required to establish the validity of that title. Corbett v. Nutt, 59 Va. (18 Gratt.) 624, 648 (1868).[2] Actions for unlawful detainer in the foreclosure context generally fall into this category.[3]

---

[2] Where the right of possession depends solely upon a claim of title, the question of whether that title is valid is a threshold question in an unlawful detainer action. While a court's resolution of that question in an unlawful detainer action may not, by statute, be preclusive in actions for ejectment or to quiet title, the court trying the unlawful detainer action nevertheless must weigh the parties' competing arguments about validity to determine whether a plaintiff's prima facie right of possession evidenced by a trustee's deed has been rebutted by the defendant.

[3] In her opinion concurring in part and dissenting in part, Justice McClanahan overlooks this distinction between (1) the unlawful detainer plaintiff who once held both title and possession and thereafter yielded possession temporarily, on terms, to the unlawful detainer defendant who continues to hold possession in violation of those terms, and (2) the unlawful detainer plaintiff who never held possession and claims a right of possession based solely upon a claim that he acquired title after the defendant lawfully entered. While the first plaintiff may bring an unlawful detainer action to "recover" possession, the second cannot--because he never had it to begin with. The latter plaintiff can only bring such an action to "obtain" possession for the first time. When he does so, the validity of his claimed right of possession cannot be severed from the validity of his claimed title, because his title is the only thing from which any right of possession appears. Thus, it is he, the unlawful detainer plaintiff, who by seeking to oust the defendant of possession (based upon a claim of after-acquired title) seeks to establish complete title (in the terms of Pannill v. Coles, 81 Va. (6 Hans.) 380, 384 (1886)), by "unit[ing] in himself the possession, the right of possession, and also the right of property." 2 William Blackstone, Commentaries *198.

In the specific context of a foreclosure, the foreclosure purchaser plaintiff comes to court claiming a right of possession based on a claim of legal title, itself based on the trustee's deed by which the trustee has ostensibly conveyed to the foreclosure purchaser the legal title conveyed in the deed of trust to the trustee by the defending homeowner. Meanwhile, the defending homeowner has possession, which the foreclosure purchaser plaintiff seeks to oust. The question of which of the two parties is entitled to possession is inextricably intertwined with the validity of the foreclosure purchaser's title.

In most foreclosure cases, a trustee's deed will satisfy the foreclosure purchaser's burden to establish that it acquired a right of possession after the homeowner's original, lawful entry, and the homeowner will have no good-faith basis to contest it. However, in limited circumstances, the homeowner could allege facts sufficient to place the validity of the trustee's deed in doubt. In such cases, the general district court's lack of subject matter jurisdiction to try title supersedes its subject matter jurisdiction to try unlawful detainer and the court must dismiss the case without prejudice. Warwick, 56 Va. (15 Gratt.) at 542 ("[O]n being convinced that the case involves a bona fide claim of title to real estate," a court not of record "is bound to dismiss [the proceeding] immediately.").[4]

This holding does not mean that any naked allegation that the trustee's deed is invalid will put the deed in doubt, thereby divesting the general district court of jurisdiction. The question of title raised by the homeowner's allegations must be legitimate. Id. at 542 (requiring dismissal if "the case involves a bona fide claim of title" (emphasis added)). Because "a court always has jurisdiction to determine whether it has subject matter jurisdiction," Morrison, 239 Va. at 170, 387 S.E.2d at 755, the court has the authority to explore the allegations to determine whether, if proven, they are sufficient to state a bona fide claim that the foreclosure sale and trustee's deed could be set aside in equity. Stated differently, the allegations must be sufficient to survive a demurrer had the homeowner filed a complaint in circuit court seeking such relief.

---

[4] We said in Warwick that subject matter jurisdiction to try title must be "expressly conferred [upon courts not of record] by statute." 56 Va. (15 Gratt.) at 542. Code §§ 16.1-77(3) and 8.01-126 do not expressly confer that power upon general district courts. The General Assembly may, of course, amend the statutes to do so, or it may be satisfied that circuit courts have subject matter jurisdiction both to try title and to adjudicate actions for unlawful detainer under Code § 8.01-124, which permits foreclosure purchasers to initiate unlawful detainer actions in circuit court.

For example, we have indicated that a trustee's deed could be set aside in "cases involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court." Ramos v. Wells Fargo Bank, NA, 289 Va. 321, 324 n.*, 770 S.E.2d 491, 494 n.* (2015) (per curiam) (internal alteration and quotation marks omitted). This list is not exhaustive. We have also said that a foreclosure sale could be set aside in equity when it was conducted in material breach of the deed of trust. Smith v. Woodward, 122 Va. 356, 374, 94 S.E. 916, 921 (1918) ("[A] court of equity will not permit a grantor in trust to be deprived of his property by an unauthorized act of the trustee, and will set aside a sale and conveyance where the trustee has exceeded the authority conferred upon him, or sold the grantor's land after the purposes of the trust have been accomplished, and especially where the purchaser has notice, actual or constructive, of the facts."); see also Wasserman v. Metzger, 105 Va. 744, 752-53, 54 S.E. 893, 895 (1906) (collecting cases).[5]

If the general district court satisfies itself that the allegations are insufficient, it retains subject matter jurisdiction and may adjudicate the case on the merits. However, if the court determines that the allegations are sufficient, it lacks subject matter jurisdiction over the case and it must be dismissed without prejudice.[6] The foreclosure purchaser may then seek appropriate

---

[5] A general allegation that the trustee breached the deed of trust is not sufficient. The homeowner's allegations must (1) identify with specificity the precise requirements in the deed of trust that he or she asserts constitute conditions precedent to foreclosure, (2) allege facts indicating that the trustee failed to substantially comply with them so that the power to foreclose did not accrue, and (3) allege that the foreclosure purchaser knew or should have known of the defect. See Squire v. Va. Hous. Dev. Auth., 287 Va. 507, 515-18, 758 S.E.2d 55, 60-61 (2014).

[6] Our decision today that general district courts lack subject matter jurisdiction over unlawful detainer cases where the homeowner raises a legitimate question of title does not reopen for collateral attack past cases where homeowners could have presented such questions but did not. General district courts have subject matter jurisdiction over unlawful detainer cases. What they lack is subject matter jurisdiction to try title. Where the homeowner presented no question of title, the court's jurisdiction was complete.

Similarly, where a homeowner does present a question of title but the general district court determines that it is not legitimate, that decision may be voidable if the homeowner

7

remedies in the circuit court under its original jurisdiction.[7]

We must now apply this rule to the case before us. The Parrishes' only detailed allegations are in the pleadings they filed in the general district court. However, in their other assignment of error they assert that the circuit court erred by considering those pleadings in their de novo appeal. They argue that the nature of a de novo appeal precludes such consideration. Fannie Mae responds that the court did not err because Code § 16.1-112 requires the general district court to transmit the record of the original proceedings to the circuit court when an appeal is taken there.

The burden lies with the appellant to show reversible error below. Lindsey v. Lindsey, 158 Va. 647, 654, 164 S.E. 551, 553 (1932). Apart from Code § 16.1-106, the Parrishes cite no legal authority for their argument. Although Code § 16.1-106 provides that appeals from courts not of record are heard by the circuit court de novo, Code § 16.1-112 requires the lower court to transmit its record to the circuit court. We have previously held that although de novo, an appeal in the circuit court is a continuation of the original case. Stacy v. Mullins, 185 Va. 837, 840, 40 S.E.2d 265, 266 (1946). Accordingly, we find no basis to conclude that the circuit court erred by considering the pleadings filed in the general district court.

Turning to the allegations set forth in those pleadings, we note that the Parrishes alleged that their deed of trust incorporated 12 C.F.R. § 1024.41(g) as a condition precedent to foreclosure. That regulation prohibits a foreclosure sale after a homeowner submits a complete

---

challenges it as erroneous on direct appeal. However, the decision would not be subject to collateral attack because the general district court will have rendered no judgment it lacked subject matter jurisdiction to render.

[7] Nothing in our decision today relieves a homeowner of the obligation to pay his or her lender, which arises from the note, not the deed of trust. The deed of trust merely secures the indebtedness evidenced by the note. As we indicated in Mathews v. PHH Mortgage Corp., 283 Va. 723, 732-33 & n.2, 724 S.E.2d 196, 200 & n.2. (2012), a breach by one party of the note does not relieve the other party of its obligations under the deed of trust, or vice versa.

8

loss mitigation application under certain circumstances. They alleged that they submitted such an application and that none of the exceptions provided in the regulation (which would have permitted Fannie Mae and its agent to proceed to foreclosure notwithstanding the application) applied. We may further infer from their allegations that the foreclosure purchaser, Fannie Mae, was aware of the alleged violation of the deed of trust because it was the lender that allegedly committed the violation. We conclude that these allegations are sufficient that, if proved, they could satisfy a court of equity to set aside the foreclosure.

We therefore hold that the Parrishes raised a bona fide question of title in the unlawful detainer proceeding, thereby divesting the general district court of subject matter jurisdiction. Accordingly, the general district court lacked subject matter jurisdiction to try the unlawful detainer action before it. The circuit court likewise lacked subject matter jurisdiction while exercising its de novo appellate jurisdiction, because its subject matter jurisdiction was derived from and limited to the subject matter jurisdiction of the court from which the appeal was taken. Its authority therefore was limited to dismissing the proceeding without prejudice, thereby enabling the foreclosure purchaser to pursue its choice of available remedies in the circuit court under that court's original jurisdiction.

## III. CONCLUSION

We conclude by reiterating that our holding arises from the need to reconcile Addison and Warwick (i.e., that courts not of record lack power to try title unless expressly conferred by the General Assembly) with the scope of the subject matter jurisdiction conferred on general district courts in Code § 8.01-126. We appreciate the concerns about the practical implications of this holding raised by Justice Powell in her opinion concurring in part and dissenting in part. We particularly note her observation that our holding provides no opportunity for a defending homeowner to argue or prove that a trustee's deed is simply invalid, whether the foreclosure

9

purchaser is a bona fide purchaser or not. However, these concerns are properly addressed to the General Assembly. We must determine the scope of subject matter jurisdiction relying upon the statutes as they are presently enacted.

For the reasons stated above, we vacate the judgment of the circuit court and dismiss the summons for unlawful detainer, thereby restoring the parties to their status quo ante the commencement of the unlawful detainer proceeding.

<u>Vacated and dismissed.</u>

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

While I agree with the majority that the circuit court did not err in considering the pleadings filed in the general district court, I disagree with the majority's conclusion that the general district court was divested of subject matter jurisdiction to try the unlawful detainer action. Furthermore, because the Parrishes' allegations of a breach of the deed of trust, even if true, would not entitle the Parrishes to possession of the property in an unlawful detainer action, I would affirm the judgment of the circuit court.

A. Subject Matter Jurisdiction

In a result-oriented approach, the majority creates, and then resolves, a question of subject matter jurisdiction that has heretofore never existed. The majority accomplishes this result by disregarding traditional principles of title to deprive the general district court of jurisdiction expressly granted to it by the General Assembly. The majority eliminates right of possession as an element of title and crafts an entirely new, albeit undefined, concept of "title" along with a new procedure for adjudicating this vague right.

At the outset, the majority's approach is premised upon a fundamental misunderstanding of real property law and the nature of an unlawful detainer action. In particular, the majority

10

opinion fails to distinguish between right of possession – a degree of title to real property that is subject to adjudication in an unlawful detainer action – and complete title, which is not at issue in an unlawful detainer action. Well-settled principles of title establish that right of possession is an element or degree of title in and of itself that does not depend on good and complete title.[1] "The question to be determined in [an unlawful detainer] case is the right of possession, and to this end the question of the complete title is not the question to be determined; and to maintain the action the plaintiff need not have the complete title." Pannill v. Coles, 81 Va. (6 Hans.) 380, 385 (1886). In Pannill, the Court explained that while an unlawful detainer action does not involve "complete title," it is an action "concerning title" because it determines "any element of

---

[1] "There are several stages or degrees requisite to prove a complete title to lands and tenements:

1st. The lowest and most imperfect degree of title consists in the mere naked possession or actual occupation of the estate, without any apparent right or any shadow or pretence of right to hold or continue such possession. And at all events without such actual possession no title can be completely good. 2d. The next step to a good and perfect title is the right of possession, which may reside in one man while the actual possession is not in himself, but in another. 3d. The mere right of property, the proprietatis, without either the possession, or the right of possession, the mere right is in him, the jus merum, and the estate of the owner is in such cases said to be totally divested, and put to a right. 4th. A complete title to lands, tenements, and hereditaments. For it is an ancient maxim of the law that no title is completely good unless the right of possession be joined with the right of property, which right is then denominated a double right, jus duplicatum, or droit droit. And when, to this double right the actual possession is also united, there is, according to the expression of Fleta, juris et seisinae conjunctio, there and then only is the title completely legal."

Pannill v. Coles, 81 Va. (6 Hans.) 380, 383-84 (1886) (emphasis added) (quoting 2 William Blackstone, Commentaries 195); see also 2 Henry St. George Tucker, Commentaries on the Laws of Virginia 178-80 (3d ed. 1846); 2 John B. Minor, Institutes of Common and Statute Law 511-15 (3d ed. 1882).

11

complete title," i.e., right of possession.  Id. at 385-86.[2]  The Court clarified that despite

"expressions" in previous cases "in which possession seems to have been contrasted with the

title," a controversy concerning right of possession is a controversy concerning title.  Id.; see also

Seitz v. Federal National Mortgage Ass'n, 909 F. Supp. 2d 490, 499 (E.D. Va. 2012) ("Thus,

generally speaking, in an unlawful detainer action, the court is largely confined to a

determination within Blackstone's first and second 'degrees' of title."); In re Cherokee Corp.,

222 B.R. 281, 286 (Bankr. E.D. Va. 1998) ("The issue of proper title is separate and independent

of a determination of lawful possession" and is "irrelevant to a claim of unlawful detainer.").

The General Assembly has expressly conferred jurisdiction upon general district courts to

try right of possession in unlawful detainer actions.  See Code § 16.1-77(3) and Code § 8.01-

126.[3]  Following the principles discussed in Pannill, right of possession is a degree of title that

presents an issue for resolution independent of any issue of good and complete title.  Therefore,

upon simple application of these principles, it is clear that the general district court had subject

matter jurisdiction to determine whether Fannie Mae was "entitled to the possession" of the

---

[2] The Court's discussion in Pannill of the distinction between right of possession and complete title arose in the context of the appellee's motion to dismiss the writ of error on the grounds that Article VI, Section 2, of the Constitution of Virginia did not confer appellate jurisdiction on the Court over an unlawful detainer action because it was not a controversy "concerning the title" of land.  Pannill, 81 Va. at 382-83.  The Court concluded that an unlawful detainer action, involving only right of possession, involved an element of title, and therefore, was an action "concerning title."  Id. at 385-86.

[3] Code § 16.1-77(3) provides that "each general district court shall have . . . [j]urisdiction of actions of unlawful entry or detainer as provided in Article 13 (§ 8.01-124 et seq.) of Chapter 3 of Title 8.01."  Code § 8.01-126(A) provides that "[i]n any case when possession of any house, land or tenement is unlawfully detained by the person in possession thereof, the landlord, his agent, attorney, or other person, entitled to the possession may present to a magistrate or a clerk or judge of a general district court a statement under oath of the facts which authorize the removal of the tenant or other person in possession."

Code § 8.01-126 does not make the distinction, as the majority does, between the unlawful detainer plaintiff "who once held both title and possession" and the unlawful detainer plaintiff "who never held possession."

12

property without regard to whether Fannie Mae had good and complete title. Code § 8.01-126(A).[4] The Parrishes' allegations of a breach of the deed of trust, while they may very well assert a cloud upon Fannie Mae's good and complete title, did not divest the general district court of jurisdiction because right of possession does not depend on good and complete title.[5]

Despite the clear grant of subject matter jurisdiction to the general district court to try right of possession and settled law establishing that right of possession does not depend on complete and good title, the majority creates a question of subject matter jurisdiction by eliminating right of possession as a distinct element of title separate from complete title and adopting a new one-dimensional, yet undefined, concept of title from which right of possession

---

[4] Instead of unpacking the broad principle that general district courts are without jurisdiction to "try title" to understand how it operates in conjunction with settled rules of title and the statutory grant of jurisdiction to general district courts to try right of possession in unlawful detainer actions, the majority plainly discards the "first principles" of title previously approved by this Court. See Pannill, 81 Va. at 383. Armed with its newly crafted concept of "title," the majority invokes this broad principle as applied outside the context of unlawful detainer actions. See, e.g., Addison v. Salyer, 185 Va. 644, 648, 40 S.E.2d 260, 262 (1946) (trial justice was without jurisdiction to reform deed in an attachment proceeding); Warwick v. Mayo, 56 Va. (15 Gratt.) 528, 540-41 (1860) (where the mayor imposed a fine for alleged obstruction of a street and person so fined claimed ownership of property on which the obstruction was placed, the mayor was without jurisdiction to determine ownership of property). These cases do not involve unlawful detainer actions, and therefore, the jurisdiction granted to courts to adjudicate right of possession. Furthermore, neither contains any discussion of the successive degrees of title. Accordingly, they cannot provide any meaningful guidance here.

[5] Although the majority characterizes this case as involving a challenge to the validity of the trustee's deed, the Parrishes do not seek to invalidate the trustee's deed. In fact, the Parrishes readily acknowledge that they cannot and do not seek to set aside the trustee's deed. The issue before the general district court was whether the Parrishes' allegations of a breach of the deed of trust, if proven true, would entitle them to possession of the property in the absence of setting aside the trustee's deed. If proof of a violation of the deed of trust would entitle the Parrishes to possession, then the general district court would be required to consider such evidence and determine right of possession. If proof of violation of the deed of trust would not entitle the Parrishes to possession, then such evidence would be irrelevant to the determination of right of possession. Under either scenario, the general district court had jurisdiction to determine the right of possession.

flows.[6]  Having abandoned the traditional elements of title, it is hardly surprising that the

majority finds itself in a "conundrum."  Under the majority's nebulous concept of title, the broad

principle that general district courts cannot try title takes on a novel meaning and leads to the

absurd result that general district courts are no longer empowered to adjudicate right of

possession whenever a dispute arises over "title" – as that term is understood by the majority.[7]

Not only has the majority abandoned settled principles of real property law, it has

practically eliminated the availability of the summary proceeding of unlawful detainer to

purchasers of property at foreclosure sales.  The majority's new procedure for obtaining

possession operates to deprive record owners of possession until disputes over "title" are

adjudicated <u>after the record owner</u> has sought the "appropriate" remedy in circuit court.[8]

---

[6] The majority's rejection of the principles of title discussed in <u>Pannill</u> appears to be based on language found in the earlier case of <u>Corbett v. Nutt</u>, 59 Va. (18 Gratt.) 624, 648 (1868), an unlawful detainer action in which the parties presented competing evidence of right of possession.  Noting that the controversy in an unlawful detainer action may turn "upon the validity of the title under which the defendant claims to hold the possession," the Court in <u>Corbett</u> rejected an argument that unlawful detainer was not an appropriate remedy where "title alone is involved."  This language is entirely consistent with the Court's recognition in <u>Pannill</u> that right of possession is a form of title and, in fact, validates the reality that unlawful detainer actions are an expedient statutory remedy for determining the right of possession, one form of title – not good and complete title.  Furthermore, to the extent the majority relies on this language as authority for the proposition that right of possession depends on good and complete title, this interpretation is analytically unsupported because <u>Corbett</u> was decided prior to <u>Pannill</u>, <u>Pannill</u> is consistent with <u>Corbett</u>, and the majority must abandon the traditional four degrees of title in favor of a one-dimensional concept of title to get there.

[7] Although it is clear that the majority has abandoned the traditional elements of title recognized in <u>Pannill</u>, it is not clear what the majority means when it refers to the term "title." Since the majority has concluded that a general district court must dismiss an unlawful detainer action that involves a bona fide claim of title, the majority seems to equate its concept of title with the degree of good and complete title recognized under traditional property law principles.

[8] The majority's flawed understanding of title and the nature of an unlawful detainer action is illustrated by its suggestion that the circuit court could adjudicate right of possession in an unlawful detainer action brought under Code § 8.01-124 even when the general district court could not under Code § 8.01-126.  But "judgment in an action of unlawful detainer settles nothing, even as between the parties, in regard to [good and complete] title."  <u>Brown v. Lawson</u>, 86 Va. 284, 286, 9 S.E. 1014, 1015 (1889).  This is true regardless of where the action originates.

14

Specifically, under the majority's holding, the Parrishes are entitled to retain possession of the property, without any obligation of payment, while record ownership, and the corresponding obligations of record ownership, including payment of taxes, remain with Fannie Mae. The majority's new procedure, which appears to involve determination of something more than right of possession but something less than good and complete title, is unnecessary since avenues already exist for claims of a wrongful conveyance of property, e.g., actions to set aside deeds.[9] Yet, under the majority's holding, the Parrishes need not seek to set aside the deed but may, nevertheless, deny possession to the record owner merely upon the allegations that they have grounds to set aside the deed if they were so inclined, thereby ousting the general district court of its jurisdiction.

In sum, I cannot join the majority's effort to implement a policy in Virginia that effectively prevents a class of record property owners from obtaining possession of property via a summary proceeding that has been in place for centuries.[10] If it is to be the policy of Virginia that there should be limitations on the right of purchasers at foreclosure sales to obtain possession of the property, then the adoption of such a policy and specific limitations on the right

Fannie Mae already holds the deed to the property. Thus, it is not apparent what the "appropriate remedy" for Fannie Mae to seek in circuit court would be.

[9] Parties who believe they are aggrieved by a wrongful conveyance of property may file an action seeking to set aside the conveyance and enjoin prosecution of an unlawful detainer action. See e.g., Hamilton v. Stephenson, 106 Va. 77, 55 S.E. 577 (1906) (action against trustee and purchaser to set aside sale and enjoin prosecution of unlawful detainer); Wohlford v. Wohlford, 121 Va. 699, 93 S.E. 629 (1917) (action to set aside codicil to will and deed and enjoin prosecution of unlawful detainer); see also Whitlow v. Mountain Trust Bank, 215 Va. 149, 207 S.E.2d 837 (1974) (action to set aside foreclosure sale). Even where a party disputes the right of possession in an unlawful detainer case and loses, that party is not precluded from bringing an action to have the deed annulled. Harrison v. Manson, 95 Va. 593, 595-96, 29 S.E. 420, 421 (1898).

[10] By altering the definition of title and relegating right of possession to nothing more than an ambiguous notion, the majority has effectively eliminated the usefulness of this summary proceeding outside the context of actions between landlords and tenants.

of possession should be accomplished by an act of the General Assembly, not through judicial pronouncement by this Court. See Bevel v. Commonwealth, 282 Va. 468, 479-80, 717 S.E.2d 789, 795 (2011); Hackley v. Robey, 170 Va. 55, 66, 195 S.E. 689, 693 (1938). "The public policy of the Commonwealth is determined by the General Assembly [because] it is the responsibility of the legislature, and not the judiciary, . . . to strike the appropriate balance between competing interests." Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010) (internal quotation marks and citation omitted).

B.  Present Right of Possession

Since I would hold that the general district court did have subject matter jurisdiction over the unlawful detainer action, I would proceed to determine whether the circuit court erred in granting summary judgment in favor of Fannie Mae.

In my view, the circuit court did not err in concluding that Fannie Mae was entitled to possession, since proof of violation of the terms of the deed of trust would not entitle the Parrishes to possession of the property in this action. This Court has stated that "if trustees invested with the legal title to an estate conveyed it to another in plain violation of the trust, and even by a deed which on its face shows such violation, the title of the grantee is good at law, and resort must be had to a court of equity to set aside the deed." Carrington v. Goddin, 54 Va. (13 Gratt.) 587, 601 (1857). Applying that principle here, the trustee's deed is valid and establishes Fannie Mae's right of possession unless it is set aside by a court hearing an equitable cause of action for such relief. Since that remedy is not available in an unlawful detainer action, which only determines right of possession, the Parrishes' allegations of a breach of the deed of trust are

16

not relevant to a determination of the right of possession.[11]

For example, the United States District Court for the Eastern District of Virginia held that where a foreclosure is invalidated, the purchaser at foreclosure is nevertheless in lawful possession of the property from the time of purchase until the date the sale is invalidated. In re Cherokee Corp., 222 B.R. 281 (Bankr. E.D. Va. 1998).

> Case law is unclear on the issue of whether the purchaser of property at a trustee's auction is vested with proper title during the period before the sale is later invalidated because it was not properly conducted. However, proper title is irrelevant to a claim of unlawful detainer because, lawful possession of property is the only issue to be determined in a claim for unlawful detainer.

> We conclude that by virtue of the trustee's sale [the creditor] had a right to possess the property until the sale was invalidated on January 20, 1995. [Debtor] has not proven that [creditor] unlawfully held the property as against [debtor] because [creditor] rightfully possessed the property.

Id. at 286.

In sum, Fannie Mae presented evidence of its right to possession by virtue of the trustee's deed. The Parrishes admit that the property was sold to Fannie Mae and that the deed of conveyance is recorded in the land records. And there is no claim by the Parrishes that the deed is facially invalid. Because the Parrishes' allegations of a violation of the deed of trust, even if true, would not deprive Fannie Mae of its right to possession, the circuit court did not err in awarding Fannie Mae possession of the property.

C. Conclusion

For the foregoing reasons, I would affirm the judgment of the circuit court.

---

[11] As noted previously, the Parrishes could have filed an action to set aside the conveyance after the foreclosure sale if they believed the conveyance was unlawful. In fact, the record reflects that they ultimately did file an action seeking rescission of the trustee's deed after Fannie Mae moved for summary judgment in the unlawful detainer action when it was on appeal to the circuit court.

JUSTICE POWELL concurring[1] in part and dissenting in part.

Although I agree with the majority that general district courts, as courts not of record, do not have the subject matter jurisdiction to try title to real property, I cannot agree with the majority's reasoning that questions concerning title are the equivalent of trying title. In my opinion, there is a significant difference between an action that turns on the question of title and an action that tries title. The former is merely an evidentiary question, whereas the latter involves a conclusive determination of a party's claim of title. As the majority's ruling is unsupported by this Court's jurisprudence, leads to an unnecessary expansion of the concept of trying title and impedes the ability of home owners to protect the possession of their homes, I must respectfully dissent.

As an initial matter, rather than simply equate a question concerning title with trying title, I believe it is important to first define the term "try title." Our jurisprudence makes it clear that the term clearly encompasses a number of different actions. Accordingly it is necessary to review these actions in order to provide a proper definition. The two most common forms of trying title are ejectment (Code § 8.01-131, et seq.) and quiet title (Code § 55-153). "Ejectment is an action at law to determine title and right of possession of real property." Brown v. Haley, 233 Va. 210, 216, 355 S.E.2d 563, 567 (1987). At common law, an ejectment action "was the exclusive remedy to try title and settle controverted boundaries of land." Patterson v. Saunders, 194 Va. 607, 610, 74 S.E.2d 204, 206 (1953). To bring an ejectment action, a plaintiff must allege he is the owner of the legal title to real property that he does not currently possess. Otey v. Stuart, 91 Va. 714, 716, 22 S.E. 513, 514 (1895). Further, "[t]he plaintiff has the burden of

---

[1] I fully agree with the majority's analysis with regard to the circuit court's consideration of the pleadings filed in the general district court.

proving that he has good title and the right to possession, and he must recover upon the strength of his own title rather than upon the weakness of the defendant's title." Providence Properties, Inc. v. United Virginia Bank, 219 Va. 735, 744, 251 S.E.2d 474, 479 (1979). Most importantly, once the plaintiff proves he has good title and the right of possession, the judgment in his favor "shall be conclusive as to the title or right of possession established in such action, upon the party against whom it is rendered, and against all persons claiming from, through, or under such party, by title accruing after the commencement of such action, except as hereinafter mentioned." Code § 8.01-163 (emphasis added).

In contrast to an ejectment action, a party in possession of the property who claims to have good title and the right of possession must bring an action to quiet title. "[A]n action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." Maine v. Adams, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009). Further, "in a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." Id. Thus, unlike ejectment, where judgment only concludes the matter between the parties to the action, the judgment in a quiet title action conclusively establishes complete title to the property in the prevailing party.

In addition to ejectment and actions to quiet title, this Court has recognized a third form of trying title: actions that implicitly try title. Such actions arise where the issue of title is raised and conclusively adjudicated between the parties in a collateral proceeding. Unlike the other forms of trying title, actions that implicitly try title do not establish complete title in one party or

19

the other; rather, such actions typically conclusively establish that one party does not hold title to the property and estops that party from asserting title in a subsequent action.

> The trial of an action of trespass may turn upon the question of title, and if either of the parties puts his title in issue, and it is tried and passed upon, the verdict and judgment in that suit will be conclusive evidence in favor of (or against) such title, at least in a subsequent action of trespass.

Douglas Land Co. v. T. W. Thayer Co., 113 Va. 239, 242, 74 S.E. 215, 216 (1912) (internal quotation marks and citation omitted).

Noting that the underlying action was for trespass, the Court in Douglas Land Co. expressed no opinion as to whether, in an ejectment action, "the judgment in the action of trespass would be conclusive of the title between the parties." Id. However, upon revisiting the issue, this Court acknowledged that a party is estopped from relitigating the issue of title in an ejectment action if that issue has already been raised and conclusively adjudicated on the merits in a trespass action. Kesler v. Fentress, 223 Va. 14, 18-19, 286 S.E.2d 156, 158 (1982).

When the various actions trying title[2] are viewed together the defining characteristic of these actions becomes readily apparent. An ejectment action conclusively establishes whether or not the plaintiff is entitled to complete title to the property. An action to quiet title conclusively establishes who holds complete title to the property. An action that implicitly tries title conclusively establishes that a party does or does not hold title to the property, thereby estopping at least one party to the action from subsequently bringing an action to try title. Notably, all of the actions trying title that have been recognized by this Court will always result in at least one party being conclusively adjudicated as holding or not holding complete title to the property.

---

[2] That is not to say that these are the only forms of trying title; undoubtedly other forms exist. However, at present, these are the only forms of trying title that research indicates that our jurisprudence has recognized.

20

Thus, the defining characteristic of an action trying title is that collateral estoppel prevents at least one party to the action from relitigating the issue of title because that issue has been conclusively determined as to that party. Therefore, in my opinion, the term "try title" refers to those actions that result in a conclusive adjudication of whether a party does or does not have title to property.

Unlawful detainer actions, on the other hand, involve a "controversy concerning the possession of land." Pannill v. Coles, 81 Va. (6 Hans.) 380, 383 (1886) (emphasis added). The purpose of such actions is "to try the right of possession." Gale v. Trust Co. of Norfolk, 142 Va. 170, 171, 128 S.E. 643 (1925). This Court has recognized that, while the determination of who has the right of possession "may turn altogether upon the validity of [a party's] title," Corbett v. Nutt, 59 Va. (18 Gratt.) 624, 648 (1867), "the question of complete title is not the question to be determined." Pannill, 81 Va. (6 Hans.) at 385 (emphasis added). Indeed, for 190 years, this Court has recognized that in an unlawful detainer action "[t]he only question is, whether the plaintiff is entitled to possession as against the defendant. For the purpose of determining his question, the title may be given in evidence." Allen v. Gibson, 25 Va. (4 Rand.) 468, 477 (1826). By the same token, for the purpose of determining possession, the title that has been given into evidence should be subject to inquiry, just like any other piece of evidence.

Moreover, as previously noted, the defining characteristic of an action trying title is the collateral estoppel that attaches with regard to a party's claim of title. "To ascertain the scope of the estoppel sought to be asserted, and to determine just what has been adjudicated and between what parties, inquiry may extend to the evidence and instructions as well as to the pleadings and judgment." Patterson v. Anderson, 194 Va. 557, 565, 74 S.E.2d 195, 200 (1953). A review of the proceedings in this case indicates that neither party sought to conclusively adjudicate the

21

issue of title. Therefore, because neither party could rely on this action for collateral estoppel purposes, it cannot be said that the present case is an action to try title.

Not only is neither party seeking to have the issue of title conclusively adjudicated, but the General Assembly has expressly indicated that neither party *could* seek to have such an issue conclusively adjudicated in an unlawful detainer action. Code § 8.01-130 explicitly states:

> No judgment in an action brought under the provisions of this article shall bar any action of trespass or ejectment between the same parties, nor shall any such judgment or verdict be conclusive, in any such future action, of the facts therein found.

Code § 8.01-130 makes it clear that the General Assembly did not intend for an unlawful detainer action to definitively resolve any issue as to title.[3] Rather, the General Assembly has explicitly stated the exact opposite: unlawful detainer actions cannot conclusively establish any issue as to title. In other words, the General Assembly intended for unlawful detainer actions to have the limited effect of deciding who among the parties to the action has the right of possession at that time. In light of the plain language of Code § 8.01-130, it is unclear how it can be said that an unlawful detainer action "tries title."[4]

Furthermore, this statutory scheme supports the principle that not only can evidence of title be presented in an unlawful detainer action, but it can also be disputed. By including Code

---

[3] It is worth noting that, absent Code § 8.01-130, there is very little difference between ejectment and unlawful detainer. Indeed, both actions are "founded on the plaintiff's right of possession at the time of the institution of the action." Williamson v. Paxton, 59 Va. (18 Gratt.) 475, 505 (1867) accord Pettit v. Cowherd, 83 Va. (8 Hans.) 20, 25, 1 S.E. 392, 395 (1887). The only actual significant difference between the two actions is that an unlawful detainer action lacks the preclusive effect of an ejectment action due to Code § 8.01-130.

[4] It should be noted that Code § 8.01-130 does not distinguish between unlawful detainer actions brought in the general district court and unlawful detainer actions brought in the circuit court. Thus, it is clear that the General Assembly did not intend for an unlawful detainer action to try title, regardless of whether the action is brought in the general district court or the circuit court. Indeed, the fact that Code § 8.01-130 applies equally to an unlawful detainer action filed in either court indicates that the General Assembly intended for such actions to be treated the same, regardless of what court the action is filed in or what defense is raised.

§ 8.01-130, the General Assembly indicated that it anticipated evidence of title would be presented and disputed in an unlawful detainer action. If it did not anticipate such evidence would be presented, there would be no need for any limitation of the preclusive effects of unlawful detainer actions, especially with regard to matters that actually try title (i.e., ejectment actions).

Finally, it cannot be overlooked that the General Assembly has expressly conferred jurisdiction over unlawful detainer actions upon general district courts with no limitations. Contrary to the result reached by the majority, nothing in Code §§ 16.1-77(3) or 8.01-126 indicates any limitation upon the jurisdiction of a general district court to hear unlawful detainer actions.[5] For example, Code § 16.1-77(3) does not indicate that general district courts have jurisdiction over all unlawful detainer actions *except* those that concern a question of title. Given our presumption "that the General Assembly, when enacting new laws, is fully aware of the state of existing law relating to the same general subject matter," Gillespie v. Commonwealth, 272 Va. 753, 758, 636 S.E.2d 430, 432 (2006), the reason that no such statutory limitation exists is obvious: such language is unnecessary. A version of Code § 8.01-130 has been codified since at least 1855, see Olinger v. Shepherd, 53 Va. (12 Gratt.) 462, 473 (1855), and, as previously noted, it clearly allows for the validity of title to be litigated in an unlawful detainer action. If not, the prohibitions contained in Code § 8.01-130 would be unnecessary.

Considering that it has been the law of the Commonwealth since at least 1855 that unlawful detainer actions do not try title, Olinger, 53 Va. (12 Gratt.) at 473, in conjunction with this Court's long recognition that the validity of a party's title may be at issue in an unlawful

---

[5] That is not to say, however, that the General Assembly intended to confer upon general district courts subject matter jurisdiction to try title. Indeed, there would be no need to confer such jurisdiction because, as I have repeatedly stated, unlawful detainer actions only concern the right of possession and do not try title.

detainer action, <u>Corbett</u>, 59 Va. (18 Gratt.) at 648, it is clear to me that general district courts have jurisdiction to hear unlawful detainer actions and decide the limited issue of possession even when a bona fide question of title is raised. Thus, I fail to appreciate the conundrum to which the majority refers. I am, however, cognizant of the potential conundrum that the majority opinion creates. Notably, the majority has created a new class of cases where a court is deprived of jurisdiction, not because of the nature of the claim or the successful assertion that the court lacks jurisdiction (e.g., a plea in bar), but because the defendant simply raises a specific defense. To my knowledge, there exists no other class of cases where a court loses jurisdiction based on the nature of the defense raised.

Moreover, I am particularly concerned with what appears to be an imbalance in the majority's approach. Under the majority's approach, a plaintiff's allegation of a valid trustee's deed is sufficient to conclusively establish its right of possession. However, a defendant cannot merely present evidence to rebut the validity or bona fides of that deed in general district court. Rather, according to the majority, a defendant must do significantly more than just deny the validity of the trustee's deed. A defendant must assert a bona fide question of title "sufficient to survive a demurrer had the [defendant] filed a complaint in circuit court seeking [to set aside a foreclosure.]" In other words, a defendant must plead sufficient facts to meet a different standard for a different cause of action that can only be raised in a different court.[6] Even then,

_____

[6] Further demonstrating the seeming imbalance of the majority's approach, the majority seeks to foreclose any collateral attacks on previous unlawful detainer actions where defendants raised a question concerning title. In holding that these decisions are merely voidable, the majority presumes that the general district court's decision was based on a finding that the defendant had not raised a bona fide question of title. Rarely will we have any way of knowing the basis for the general district court's ruling. Indeed, it is not beyond of the realm of possibility that the defendant raised a bona fide question of title but lost because the general district court made a ruling on the merits, notwithstanding the fact that it had no jurisdiction to do so. The

24

by successfully raising the requisite bona fide question of title, the defendant cannot have the matter resolved in general district court. Instead, the defendant can only cause the matter to be removed from the general district court to be heard in the circuit court.

Furthermore, I cannot overlook the fact that the majority effectively holds that a general district court only has jurisdiction to rule against a defendant. If a defendant has raised sufficient allegations to allow a general district court to rule in that defendant's favor, that court loses jurisdiction over the matter, but if the defendant fails to raise sufficient allegations, the court retains jurisdiction. Stated differently, the majority has crafted an approach that prevents a general district court from ruling on the merits in favor of a defendant.

Thus, it is clear to me that the general district court had subject matter jurisdiction to hear the present case regardless of the defense raised by the Parrishes. As a result, I would also find that the circuit court properly exercised its derivative jurisdiction. Therefore, it is necessary to address the circuit court's decision to grant Fannie Mae summary judgment. In my opinion, the circuit court erred in granting summary judgment. Notably, by raising a bona fide question of title, the Parrishes have presented a disputed issue of material fact. Furthermore, our case law establishes that Fannie Mae was not entitled to judgment as a matter of law on this issue. Indeed, under this Court's jurisprudence, the exact opposite is true.

> The general rule concerning the position of a trustee under a deed of trust is that the trustee is a fiduciary for both debtor and creditor and must act impartially between them. Implicit in this rule is the proposition that a trustee must refrain from placing himself in a position where his personal interest conflicts with the interests of those for whom he acts as fiduciary.
>
> Generally, a trustee cannot be both a seller and a buyer at his own auction sale, because the two roles are incompatible. <u>When a trustee buys at his own sale, a constructive fraud exists; the</u>

---

only way to determine the basis for the general district court's ruling is to reopen the case and allow a collateral attack.

25

> transaction is voidable; and when attacked, the sale must be set aside. In such a situation, the adequacy of consideration, fairness of the sale, and good motive of the trustee in purchasing are not controlling. A prime reason for making such a sale voidable is the necessity of upholding the fiduciary relationship between the trustee and those for whom he acts.

Whitlow v. Mountain Trust Bank, 215 Va. 149, 152, 207 S.E.2d 837, 840 (1974) (citations omitted) (emphasis added).

In the present case, Atlantic Law Group, LLC ("ALG"), the trustee, was also the agent of the purchaser, Fannie Mae. Notably, ALG was not only the trustee, but it also represented Fannie Mae in the general district court and circuit court throughout the underlying litigation. Thus, the record clearly demonstrates that Fannie Mae was both the buyer and, through its agent, seller at the foreclosure auction. As Whitlow requires that the foreclosure sale be set aside, the trial court had no legal basis for granting the summary judgment. Accordingly, I would reverse the decision of the trial court and remand the matter for further proceedings.